SALVATORE SEDITA, as President of Buffalo Council of Supervisors and Administrators, Appellant-Respondent, v BOARD OF EDUCATION OF THE CITY OF BUFFALO, Respondent; JANE MCDEVITT, Intervenor-Respondent-Appellant.

Fourth Department, July 12, 1976

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (Richard *Lipsitz, Frank S. Kedzielawa* and *Carmen Putrino* of counsel), for appellant-respondent.

*Leslie G. Foschio, Corporation Counsel,* for respondent.

*Rachlin & Rachlin (Lauren Rachlin* of counsel), for intervenor-respondent-appellant.

MOULE, J. P. This case involves the propriety of an arbitrator's award which denied respondent, Jane McDevitt, permission to intervene in the arbitration proceedings and which subsequently invalidated her appointment as Supervisor of Personnel for the City of Buffalo Board of Education.

In order to appreciate fully the factual background of this case and to understand the rationale of the arbitration award, it is first necessary to identify the various collective bargaining agreements which were in effect at the time of this controversy and which bear on its resolution.

Prior to April 26, 1972 the employees of the Buffalo Board of Education were covered by three separate collective bargaining agreements and represented by three separate unions. The central office employees belonged to the Central Office Educators Association (COEA), the principals and vice-principals to the Buffalo Public School Administrators Association (BPSAA), and the classroom teachers to the Buffalo Teachers Federation (BTF). Thereafter, on April 26, 1972, approximately 20 months before McDevitt's appointment, the COEA and the BPSAA agreed to merge into the Buffalo Council of Supervisors and Administrators (BCSA). Although this merger agreement provided that the BCSA would assume immediate representation of both COEA and BPSAA members, it did not provide for a merger and integration of the respective collective bargaining agreements until July 1, 1973, some five months after McDevitt's eventual appointment. Thus as of the date of that appointment in January, 1973 the employees of the Board of Education were still covered by three separate collective bargaining agreements even though the central office employees (COEA) and the principals/vice-principals

(BPSAA) were, in fact, represented by the same union, the BCSA.

With this as a backdrop, the facts of this case are not complicated. On September 15, 1972 the respondent board of education posted a notice to all staff members announcing a vacancy in the position of supervisor of personnel. Besides prescribing the proper procedure for filing applications for this position, the notice also specified the following qualifications:

"Candidate must hold a Bachelor's and a Master's degree and meet requirements for the issuance of a permanent teaching certificate in the area of Elementary or Secondary Education. Professional preparation shall include 18 semester hours in or related to the fields of educational administration and supervision, including a course in School Administration or Organization and Supervision.

"The candidate shall have completed a minimum of three (3) years of approved and appropriate teaching."

Among the applicants for this position were respondent, Jane McDevitt, and the grievant, Charles Sodaro. At the time of her application, McDevitt was a member of the Buffalo Teachers Federation (BTF). She had been employed by the board of education for 11 years, the last six of which as a guidance counselor. Sodaro, on the other hand, was an assistant high school principal for five and one-half years and was a member of the BPSAA, the bargaining unit of the principals and vice-principals. In addition to other qualifications, he was permanently certified as a school district administrator, a school administrator and supervisor, a secondary school principal, a guidance counselor and a teacher of social studies.

Following McDevitt's eventual appointment to the position in January, 1973, Sodaro filed a grievance in which he alleged that the board had violated the express provisions of the BPSAA bargaining agreement, specifically that section which provides as follows: "All administrators shall be given proper notice of all unfilled and newly created administrative positions, the initial vacancy to be specifically identified except in cases of emergency. Within a reasonable time after such emergency, such notice shall be given. They are given the right to apply for positions for which they are qualified. A transfer or assignment to such positions shall be based upon seniority as an administrator and certification in the area, all other factors being equal."

Sodaro alleged that he was never personally interviewed for

the position, that his application was arbitrarily rejected, and that his seniority as an administrator (5 1/2 years) mandated his selection over that of McDevitt.

The first stage of the grievance procedure, consisting of a conference with a school board official, was held on January 8, 1973 and proved to be unsuccessful. Thereafter, Sodaro requested a level II hearing before the associate superintendent of personnel who subsequently found that the issue of seniority as an administrator was not applicable since more pertinent factors (e.g., elementary school experience and personnel work experience) "were equated in favor of" McDevitt. Two weeks after this decision, petitioner, the president of the BCSA, requested a level III conference with the superintendent of schools. This conference was held on March 23, 1973 and also resulted in a denial of Sodaro's grievance. In his letter of decision, dated March 27, 1973, the superintendent of schools stated: "I am sufficiently satisfied that all factors were not equal in the selection of an appointee to this position which would make a consideration of administrative seniority inapplicable."

Upon receipt of this decision, the BCSA grievance committee demanded that the issue be submitted to arbitration. Following the designation of an arbitrator, respondent McDevitt promptly requested permission to intervene in the proceedings. This request, however, was denied by the arbitrator on the basis that: (1) traditional arbitration practice did not permit such intervention; and (2) McDevitt's rights would be adequately represented and protected by her employer, the board of education.

Thereafter on November 16, 1973 a preliminary hearing was held to determine the threshold question of which of the various contract provisions between the parties (COEA, BPSAA or BTF) governed the dispute. In his subsequent award of February 14, 1974 the arbitrator concluded that the grievance must be disposed of according to the terms of the BPSAA contract. In doing so, the arbitrator at least implicitly recognized the conflicting interests of the various parties and agreements, namely that the grievant Sodaro was within the BPSAA contract; that the vacant position was properly under the COEA, and that McDevitt was a member of the BTF. He reasoned that, regardless of McDevitt's membership in the BTF, he could not apply the provisions of that contract because he was neither selected nor appointed pursuant to its

provisions. Furthermore, he noted that although the BTF had notice of the arbitration proceedings it neither appeared, sought to intervene, nor stipulated that the arbitrator could interpret or apply its contract. Thus, according to his reasoning, the issue of the applicable bargaining agreement involved only the COEA and the BPSAA contracts.

With respect to these two contracts, the arbitrator noted that, although they were merged into the BCSA, the merger agreement did not contain any "rights-diminishing" language. Thus, whatever rights Sodaro possessed under the BPSAA provisions, he also was entitled to under the integrated BCSA contract.[1] Since under the BPSAA promotion provisions, Sodaro was entitled to have his application considered in light of the specific criteria of "seniority as an administrator and certification in the area," this right could not be abridged. The arbitrator concluded that if he were to apply the COEA contract under which the position existed and which only provided that, if other factors are equal, "the applicant with the greatest length of time in the Buffalo Public School system shall be selected for the position," Sodaro would lose his additional rights under the BPSAA contract with respect to seniority as an administrator. The arbitrator thus held that the grievance must be decided pursuant to the provisions of the BPSAA collective bargaining agreement.

Further hearings were held before the arbitrator on April 1, April 22, May 20 and August 15, 1974 and again McDevitt unsuccessfully requested permission to intervene. Thereafter on October 26, 1974 the arbitrator delivered his final award. In sustaining Sodaro's grievance on the merits, the arbitrator concluded that, due to the language of the BPSAA agreement, the board of education was without power to fill BCSA vacancies (i.e., vacancies under either the BPSAA or COEA agreements) from outside the BCSA negotiating unit. He also found that the board's assertions that McDevitt was more qualified than Sodaro to be without merit. He reasoned that the decisive attributes mentioned by the board in McDevitt's case (e.g., elementary school experience and prior experience in personnel work) could not properly be considered as qualifications for the position inasmuch as they were not listed in the

---

1. Although as of the date of the preliminary hearing, the BPSAA and the COEA contracts had been merged, at the time this controversy arose, they were not so integrated and were, in fact, to be administered separately by the BCSA bargaining unit.

original notice of vacancy. Thus, since both McDevitt and Sodaro fulfilled the basic qualifications for the job, as delineated in the notice of vacancy, it was deemed improper for the board to appoint McDevitt in light of Sodaro's seniority as an administrator. Thus the arbitrator's final award was as follows:

"2. The BCSA (Charles Sodaro) grievance is sustained on the merits, in accordance with the foregoing Opinion. As set forth in the foregoing Opinion, the Board of Education is hereby directed to review all the qualified BCSA applicants who originally applied for the position of Supervisor of Personnel and to offer the position to these applicants strictly in accordance with their seniority as an administrator in the BCSA negotiating unit. The first such BCSA applicant who accepts the position shall be appointed to the position immediately. This entire procedure shall be completed not later than fourteen (14) calendar days from the date of this Award. If Charles Sodaro is the successful candidate, he shall receive back salary from January 15, 1973, such back salary being the difference between what he actually earned since that date (if less) and the salary he would have earned had he been appointed instead of Jance [sic] McDevitt. No back salary shall be awarded to any other successful candidate.

"3. The January, 1973 appointment of Jane McDevitt is hereby declared to be vacated and void as of the date of this Award."

Thereafter, the BCSA petitioned the Erie County Supreme Court to confirm this award and the board of education, in turn, cross-petitioned to vacate. McDevitt successfully sought permission to intervene in the judicial confirmation proceedings and also moved for vacatur of the award.

Special Term subsequently granted the applications to vacate and based its decision solely upon the ground that the failure of the arbitrator to allow McDevitt to intervene in the arbitration deprived her of a "vested property right" without due process of law. The court referred the matter back to the arbitrator for further proceedings and directed that upon remand McDevitt should be permitted to intervene.

On this appeal, petitioner is correct in his assertion that the due process clause of the Fourteenth Amendment does not guarantee McDevitt a right to intervene in the arbitration. Her selection as supervisor of personnel was only for a probationary term of three years and during that time, the board of

education, acting merely upon the• recommendation of the superintendent of schools, could terminate that appointment (see, Education Law, § 2573, subd 1, par [b]). Under such conditions the probationary appointee had no "liberty" or "property" interest protected by the due process guarantees of notice and a hearing before termination *(Bishop v Wood,* 426 US 341; *Board of Regents v Roth,* 408 US 564; *Matter of Bergstein v Board of Educ.,* 34 NY2d 318, 322). Since in the event of a direct dismissal by the board, McDevitt's "interest" in retaining her position would not be constitutionally protected under the due process clause, it would be patently erroneous to afford her greater protection in a collateral challenge to the propriety of her appointment. Thus, the rationale of Special Term's decision must be rejected. This rejection, however, does not, as petitioner contends, automatically mandate confirmation of the award. If other grounds for the vacatur of the award exist, then the decision of Special Term may nevertheless be affirmed.

Article 75 of the CPLR specifically limits a court's review of an arbitration award and, absent one of the grounds contained in that article, the award may not be vacated *(Matter of Granite Worsted Mills [Aaronson Cowen, Ltd.],* 25 NY2d 451, 454). Within this framework an arbitrator's misinterpretation of the facts or misapplication of the law is not statutorily sufficient to vacate the award *(Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229, 235; *Matter of Raisler Corp. [New York City Housing Auth.],* 32 NY2d 274, 282; *Lentine v Fundaro,* 29 NY2d 382, 385). However, if as respondents allege, an arbitrator has exceeded his prescribed powers, then the subsequent award may be properly vacated (CPLR 7511, subd [b], par 1, cl [iii]). In determining this issue, the Court of Appeals has stated that "[a]n award may be vacated under CPLR 7511 * * * where the construction of a document is 'completely irrational' *(Matter of National Cash Register Co. [Wilson], supra,* at p 383), or where the document expressly limits or is construed to limit the powers of the arbitrator, hence, narrowing the scope of arbitration *(Matter of Granite Worsted Mills [Cowen], supra,* at pp. 456-457." *(Lentine v Fundaro, supra,* pp 385-386.)

In the instant case, the applicable BPSAA collective bargaining agreement specifically provided that, upon submission of a grievance to arbitration, the "arbitrator shall not add to

or amend this agreement." Thus, the arbitrator was bound by the provisions of that contract and, in determining the validity and disposition of the grievance, he was foreclosed from altering or expanding the contractual duties of the parties.

There can be no doubt that the arbitrator here was faced with a difficult and perhaps insoluble problem in construing the terms of and the interrelationship between the various collective bargaining agreements. He himself admitted in his award that his decision attempted to dispose of only one horn of what was, in essence, a three-horned dilemma. However, regardless of either his intentions or the complex nature of the grievance, in our opinion, his holding that the board could only fill the vacancy from qualified BCSA applicants effectively altered the contractual duties of the board of education and was, therefore, in excess of the arbitrator's powers.

No express language in the BCSA contracts expressly limited administrative positions to members of the BCSA unit as the arbitrator held. To the contrary, a careful reading of the promotional provisions of all three collective bargaining agreements discloses that the board clearly intended to make any such vacancy open to all school board employees. Thus the BTF contract specifically allowed the covered classroom teachers to apply for *"any* promotional position in the Buffalo Public Schools for which there is not a promotional list". (Emphasis supplied.) The absence of any limiting language as to the type of position available to BTF members (e.g., administrative, teaching, etc.) indicates that they were not foreclosed from applying for positions which, although within the school system, technically fell under a different negotiating unit. This same analysis is equally applicable to the COEA members whose contract similarly provided that they could apply "for *any* promotional position in the Buffalo Public Schools." (Emphasis supplied.) Both contracts further provided that "[o]ther factors being equal, in the judgment of the Board, the applicant with the greatest length of time in the Buffalo Public School system shall be selected for the position."

As previously noted, however, the language of the BPSAA collective bargaining agreement was markedly different. That contract provided in pertinent part that "[a]ll administrators shall be given proper notice of all unfilled and newly created administrative positions * * * A transfer or assignment to such positions shall be based upon seniority as an administrator and certification in the area, all other factors being equal."

This language is obviously more restrictive than that of either the BTF or COEA contracts since BPSAA members must be given notice of and may apply for only administrative vacancies and not "any" position within the Buffalo public schools. However, inasmuch as BPSAA members, who are by definition already administrators, would rarely, if ever, apply for nonadministrative positions, the use of this language is understandable. Thus, an integrated reading of all three agreements indicates that both BTF and COEA members are eligible to apply for positions within their respective bargaining units as well as for positions outside their unit but within the school system, while BPSAA members are only entitled to apply for administrative positions.

The arbitrator, however, construed the BPSAA contract, in light of its merger with the COEA agreement, to prohibit the board from appointing non-BCSA members to administrative vacancies unless no qualified BCSA member applied. This construction clearly limited the contractual intention of the board to make such positions available to the three groups of employees regardless of their respective bargaining units. Furthermore, it also limited the board's inherent power and discretion to appoint any "qualified" person to the position. Finally, by virtue of the COEA's merger into the BCSA, it bestowed upon COEA members a pre-emptive right to be appointed over similarly qualified BTF members, regardless of the applicants' respective seniority in the school system. This construction, therefore, was in direct derogation of the express language of the contracts and by so holding, the arbitrator exceeded an express limitation on his contractually derived power and, in fact, improperly wrote a new contract for the parties (*Matter of National Cash Register Co. [Wilson]*, 8 NY2d 377, 383, *supra; Pavilion Cent. School Dist. v Pavilion Faculty Assn.*, 51 AD2d 119; *Matter of Fayetteville-Manlius Cent. School Dist. [Fayetteville-Manlius Teachers Assn.]*, 51 AD2d 91; *Rochester City School Dist. v Rochester Teachers Assn.*, 47 AD2d 719; *Matter of County of Ontario, State of N. Y. [Civil Serv. Employees Assn.]*, 46 AD2d 738).

Although we affirm the vacatur of the award, albeit on a different ground from that espoused by Special Term, we nevertheless decline to remit the matter back to the arbitrator since the issues presented here are now moot. On July 1, 1975, approximately two and one-half years after McDevitt's original appointment and just 22 days before the decision of

Special Term was entered, the contested position of supervisor of personnel was abolished due to budgetary considerations. Thus, any future determination by the arbitrator as to who is actually entitled to the position would constitute only a futile act without practical consequence. Although admittedly a subsequent award may provide, as does the vacated award, that if the grievant Sodaro should ultimately be appointed to the vacancy he should receive back pay compensation, this question is, in our opinion, purely hypothetical and does not warrant our consideration of the other issues presented here or referral for further arbitration proceedings.

Nor are we persuaded by the argument that this appeal involves "question[s] of general interest and substantial public importance" which are likely to recur and which, therefore, render permissible our consideration of a mooted issue (see *Matter of Beattie v New York State Bd. of Parole,* 39 NY2d 445, 447). Since the date of McDevitt's original appointment in January, 1973 the BPSAA and the COEA have completed the final steps in their merger and their respective bargaining agreements have been integrated into a single document. Thus, the somewhat peculiar factual situation presented here, that of three different contracts and two different unions, apparently no longer exists and our determination of the contested issues within this factual setting, would have little, if any, bearing on subsequent disputes. In light of the foregoing, we do not now reach the hypothetical question of an aggrieved employee's statutory or common-law right to intervene in arbitration under a collective labor agreement.

Accordingly, we hold that the order of Special Term vacating the arbitrator's award should be affirmed on the ground that in making the award the arbitrator clearly exceeded his powers under the BPSAA collective bargaining agreement. However, inasmuch as the position of supervisor of personnel has been abolished, we decline to remit this matter to the arbitrator on the basis that the remaining issues raised on these appeals are now moot.

CARDAMONE, SIMONS, MAHONEY and DILLON, JJ., concur.

Order insofar as it vacates arbitrator's award unanimously affirmed, without costs, and otherwise appeals dismissed as moot.