OPINION OF THE COURT
Bernard J. Fried, J.
This is an application under CPLR 7502 for an injunction in aid of arbitration. Plaintiff, Project Orange Associates, LLC (POA), seeks an order that would require defendant, General Electric International, Inc. (GEII), to continue performing its obligations under the parties’ Cogeneration Facility Operation and Maintenance Agreement (the Agreement), until the resolution of arbitration proceedings initiated by GEII. POA seeks this provisional relief primarily on the ground that any award issued by the arbitrator would be rendered ineffectual if the injunction is not granted. POA further contends that it has shown a likelihood of success on the merits, that it will suffer irreparable harm if the relief is not granted, and that the balance of the equities tips in its favor.
GEII disputes the assertion that any arbitration award would be rendered ineffectual, and further argues that POA has not met the traditional three-pronged test (pursuant to CPLR article 63) for the issuance of a preliminary injunction.
Briefly, the events giving rise to this action are as follows. Pursuant to the terms of the Agreement, entered into by the parties in April 1998 and amended December 6, 1999 and January 1, 2006,[1] GEII has been operating and maintaining a steam cogeneration facility in Syracuse, New York, which is owned by POA. GEII’s obligations under the Agreement also include the repair and maintenance of two gas turbine engines, which power electricity-producing generators and heat recovery steam generators. POA supplies the steam generated at the cogeneration facility to Syracuse University, which uses it to heat and operate its campus buildings. Syracuse University also provides steam generated at the POA facility to three hospitals in the area. (See Victor affidavit 1f 1; see also Kaveney affidavit[2] 1i 3.) According to POA, GEII is further obligated under the Agree *766 ment to ensure that the cogeneration facility has in place two operational turbines at all times. GEII, however, contends it is merely required to operate and maintain the turbines, and not to provide, unconditionally or within a specified time frame, any replacement or additional turbines. There is no dispute that, pursuant to the 2006 amendment, GEII agreed to assume the cost of up to $1 million for any unplanned or unscheduled repair of the turbines, up to a maximum of $2 million in any one calendar year. (See defendant’s exhibit H.)
Although the parties disagree on the precise reasons for the breakdown of the relationship between them, there is no dispute that, in early 2007, POA began to reject certain invoices it received from GEII, and that sometime between June and September 2008, POA ceased all payments to GEII. (See Victor affidavit 1Í 5; see also Reidy affirmation[3] If 5; Kalmes affidavit[4] 1f 47.) According to POA, the reason it began rejecting invoices was because GEII breached the Agreement by failing to provide, operate and maintain two turbines at the cogeneration facility, and that this breach resulted in lost revenue and increased costs to POA. According to GEII, however, it has complied with the terms of the operative Agreement, and POA now owes it more than $2 million in outstanding invoices.
On September 18, 2008, GEII provided POA with a notice of default, in accordance with the Agreement, and advised POA that if its default was not cured within 30 days, GEII would terminate the Agreement, cease work at the cogeneration facility, and pursue all available remedies. (Kaveney affidavit If 9; defendant’s exhibit N.) Representatives from GEII then met with Adam Victor, POA’s president and principal owner, in an effort to resolve the dispute, but no resolution was reached. On December 15, 2008, GEII provided POA with a notice of termination, which designated December 31, 2008 as the effective date of termination of the Agreement, and on December 17, 2008, GEII filed a demand for arbitration, in which it asserted a claim for $2,436,304.49, representing the amount of POA’s unpaid invoices, plus interest. (See defendant’s exhibit W; see also Victor affidavit, exhibit I, for GEII’s demand for arbitration.) Section 11.01 of the Agreement provides that all disputes “arising under, out of or in connection with the making, performance or execution of this Agreement” shall be submitted to *767 the American Arbitration Association in New York, New York. (Victor affidavit, exhibit C, at 36.)
On December 24, 2008, POA filed counterclaims in the arbitration proceeding, seeking $100 million in damages stemming from GEII’s breach of the Agreement, as well as declaratory judgments that GEII has no ground to terminate the Agreement, and that POA owes no money under the Agreement because of GEII’s breach. POA further seeks from the arbitrator
“an order mandating that [GEII] provide POA with two operational gas turbines and continue to operate and maintain the cogeneration plant for the balance of the term of the O & M agreement [sic] or, at a minimum, pending resolution of the arbitration as set forth in Section 11.06 of the Arbitration clause under the O & M Agreement.” (Victor affidavit, exhibit J.)
Section 11.06 of the Agreement provides, “All performance required by either Party under this Agreement shall continue during arbitration proceedings.” (Victor affidavit, exhibit C, at 36.) Section 14.20 provides, similarly, that all performance is to continue during any legal proceedings. (Id. at 39.)
On December 26, 2008, POA initiated the instant action, seeking to enjoin GEII from ceasing its operation and maintenance of the cogeneration facility pending resolution of the arbitration. The parties appeared before the Honorable Martin Schoenfeld, who granted a temporary restraining order (TRO) requiring GEII to continue operating and maintaining the facility, and requiring POA to “pay all amounts due and owing under the Agreement for the period between December 26, 2008 and January 6, 2009” (which was the date set down for argument on the motion for preliminary injunction), and further requiring POA to post an undertaking in the amount of $250,000 “to secure those obligations.” (Order, ex parte motion term, Dec. 26, 2008.)
On January 6, 2009, after hearing argument on the motion, I extended the TRO put into place by Judge Schoenfeld, and required POA to file an amended bond, which could be drawn upon to secure any amounts due and invoiced on a weekly basis, going forward. The question before me now is whether or not plaintiff has demonstrated that it is entitled to the preliminary injunctive relief it seeks.
In order to demonstrate entitlement to a preliminary injunction in aid of arbitration, pursuant to CPLR 7502, the petitioner must show that any award issued by the arbitrator may be *768 rendered ineffectual if the relief is not granted. The First Department also requires the application of the traditional, three-pronged test for granting a preliminary injunction, found in article 63. (Erber v Catalyst Trading, 303 AD2d 165 [1st Dept 2003] [“the criteria for provisional relief set forth in CPLR articles 62 and 63 are not relaxed when such relief is sought in aid of arbitration pursuant to CPLR 7502” (citations omitted)]; Matter of Cullman Ventures [Conk], 252 AD2d 222, 230 [1st Dept 1998] [“Moreover, we apply the general criteria governing the issuance of injunctive relief to an application for a preliminary injunction under CPLR 7502 (c)”].)
The application before me, however, differs from the more usual petition for injunctive relief in aid of arbitration in that, here, there is a contractual provision, agreed upon by the parties, which requires performance to continue during the pendency of the arbitration. Where both parties to a contract agreed to continued performance, how could a preliminary injunction requiring that very performance not be issued? Research has revealed no New York State cases[5] involving a petition for CPLR 7502 relief and a contractual provision like this *769 one, and it is thus not clear whether the petitioner must show satisfaction of the traditional, equitable factors, or whether a demonstration that the contract requires continued performance, combined with a showing that an arbitration award will be rendered ineffectual, may be sufficient. I therefore turn, first, to the language of the Agreement itself for clues as to the appropriate result.
Plaintiff insists that the plain language of section 11.06 requires the issuance of the preliminary injunction it seeks. The Agreement is explicit in its directive that any “dispute arising under, out of or in connection with the making, performance or execution” of the Agreement shall be submitted to arbitration. (Victor affidavit, exhibit C, at 36.) It is equally explicit that “[a]ll performance required by either Party under this Agreement shall continue during arbitration proceedings.” (Id.)
Defendant, however, argues that the dispute resolution provisions should not be read in isolation, but rather, in the context of the entire agreement, which also provides that GEII may, upon default by POA, elect to terminate. Section 7.02 (b) provides that, upon the occurrence of an event of default by POA, GEII “may, by written notice to POA, terminate this Agreement immediately with respect to a POA Event of Default pursuant to Section 7.02 (a) (i).” Failure by POA to pay any amount due within 30 days after notice constitutes a section 7.02 (a) (i) event of default, and thus GEII is entitled to provide POA with written notice of immediate termination. Moreover, *770 GEII argues, the term of the Agreement is defined in section 6.01 as “beginning on the Commencement Date and continuing until December 31, 2013, unless such date is extended or this Agreement is terminated as provided herein.” (Defendant’s exhibit F, at 5.) Thus, the argument is that the parties anticipated that the very term of the Agreement may be cut short by the exercise of the termination right provided for in section 7.02.
POA, however, argues that, as it has asserted a counterclaim for a declaratory judgment that GEII did not have proper grounds for termination, the effectiveness thereof must be decided by the arbitrator, and that section 11.06 mandates that performance continue while such determination is made. POA also points out that section 14.08 provides that several of the provisions contained in the Agreement, including “the dispute resolution provisions set forth in Article XI. . . shall survive in full force the expiration or termination of this Agreement.” (Defendant’s exhibit E, at 39 [emphasis added].) The dispute resolution provisions set forth in article XI include not only the provision requiring all disputes to be arbitrated, but also the one providing that performance is to continue pending any such arbitration.
While GEII contends that reading the contract to require continued performance during arbitration would effectively eviscerate its right to immediate termination, there can be no doubt that permitting GEII to terminate prior to the resolution of the arbitration proceedings would eviscerate POA’s bargained-for right to continued performance. Furthermore, denying the injunctive relief would amount to a determination by me that GEII’s termination was proper. Such a determination would strip the arbitrator of the ability to issue the declaratory judgment, sought by POA, that GEII’s termination was without basis. In other words, by reading the Agreement not to require continued performance, I would render this portion of the arbitration award completely ineffectual. Moreover, if, by declaring POA in default and terminating the Agreement, GEII is permitted to override section 11.06, POA essentially would be deprived of its right to have an arbitrator determine whether it was actually in default. If GEII ceases performance and the arbitrator later concludes that POA was never in default, and thus the termination was improper, the only award that the arbitrator could issue would be one of damages; once the Agreement is terminated, an award of specific performance is simply impractical. And, depriving the arbitrator of the ability to decide *771 on the appropriate award to issue is akin to rendering the arbitrator’s ultimate decision ineffectual.
It therefore seems that the language of the Agreement, itself, represents a decision by the parties — both sophisticated business entities — that the cessation of performance prior to arbitration would render an arbitration award ineffectual. The issuance of a preliminary injunction in aid of arbitration is therefore appropriate under these circumstances.
Application of the traditional, three-pronged test does not change the result. In this context, a likelihood of success is demonstrated where it is determined that “the arbitration clause is broad enough to encompass the claim asserted in the demand for arbitration.” (Matter of Saferstein v Wendy, 137 Misc 2d 1032, 1037 [Sup Ct, NY County 1987, Crane, J.].) Here, the breach of contract counterclaims seeking specific performance and money damages are clearly within the scope of the arbitration clause, which provides that any and all disputes arising under the Agreement are subject to arbitration.
To determine the balance of equities, I would be forced to examine evidence and delve into the merits of the claim that is properly before the arbitrator. This would “entice the court into the exclusive preserve of the arbitrator,” and this would be improper. (Id.) Without encroaching on the arbitrator’s exclusive domain, it is clear that the equities present in this case favor plaintiff, at least insofar as withholding the injunctive relief sought might result in the imminent collapse of POA, and granting the injunction would merely require GEII to continue performing as it has been. POA will be required to make continued payments, and in the event that the injunction turns out to be improperly granted, the bond already in place will serve as security for the redress of any resulting wrong or injury suffered by GEII.
As for irreparable harm, although GEII contends that POA’s assertion of a claim for money damages shows that any harm it might suffer is not irreparable, as it must clearly be compensable by damages, if GEII’s termination of the Agreement results in POA being forced out of business, then no amount of monetary damages awarded by the arbitrator would be capable of making it whole. More importantly, this argument by GEII ignores POA’s assertion of a counterclaim for specific performance. There can be no dispute that, should the arbitrator determine that an award of specific performance is appropriate, then to the extent GEII’s termination causes POA to lose its *772 business, POA will have been irreparably harmed, as the award of specific performance, as discussed above, will be ineffectual.
Accordingly, it is ordered that plaintiffs motion for a preliminary injunction in aid of arbitration is granted in accordance with this memorandum decision; and it is further ordered that the performance under the Agreement, as required by the temporary restraining order issued December 26, 2008 and extended on January 6, 2009, shall continue through the resolution of the arbitration proceedings commenced by demand dated December 17, 2008; and it is further ordered that the undertaking remains fixed in the sum of $250,000, which has already been deposited in connection with the TRO, for the purpose of securing the weekly payments due to defendant; and it is further ordered that if it is finally determined that plaintiff was not entitled to an injunction, the same undertaking[6] shall secure plaintiffs obligation to pay to the defendant all damages and costs which may be sustained by reason of this injunction.

. A copy of the Agreement is annexed to the affidavit of Adam H. Victor in support of petition for temporary restraining order and preliminary injunction, dated December 25, 2008 (hereafter Victor affidavit), at exhibit C. A copy of the 2006 amendment is annexed to the Victor affidavit at exhibit D, and a copy of the 1999 amendment is contained in GEII’s exhibit book (hereafter defendant’s exhibit), at exhibit E

. Affidavit of James A. Kaveney, Jr., Jan. 2, 2009.

. Affirmation of Thomas E. Reidy, Jan. 4, 2009.

. Affidavit of Michael J. Kalmes, Jan. 3, 2009.

. Defendant cites to a case from the Second Circuit, Connecticut Resources Recovery Auth. v Occidental Petroleum Corp. (705 F2d 31 [2d Cir 1983]), as an example of a court addressing a contractual provision requiring performance to continue during arbitration. In that case, the District Court Judge concluded that the parties did not intend performance to continue, because they did not also include a contract term providing that arbitration was a condition precedent for termination. She denied a preliminary injunction seeking to compel performance to continue both on that basis and because, after a three-day evidentiary hearing, she concluded that the plaintiff had failed to satisfy the traditional test for specific performance of a contract. (See 705 F2d at 33-34.) The Second Circuit, however, assumed that the parties intended performance to continue, but nonetheless found that the injunction was properly denied on the alternative basis of failure to satisfy the equitable prerequisites. (Id. at 36-37.)
While Connecticut Resources may be read as support for the application of the three-pronged test to the case at hand, it is distinguishable, first, on the ground that the District Court Judge had conducted a full evidentiary hearing, and second, on the ground that the Circuit Court’s application of the equitable factors was pursuant to federal law:
“We conclude, then, that to the extent that federal arbitration law applies, issuance of a status quo injunction pending commercial arbitration requires a demonstration of supporting equitable factors . . . Since the standards for specific performance of a contract under Connecticut law are substantially similar, we need not decide now whether the present status quo provision is governed by federal or state law.” (705 F2d at 35 [citations omitted].)
*769 In the present case, there has been no request for an evidentiary hearing, and it is clear that New York State law applies.
Another federal case, Guinness-Harp Corp. v Joseph Schlitz Brewing Co. (613 F2d 468 [2d Cir 1980]), involves a contractual provision requiring performance to continue during arbitration. In that case, after an evidentiary hearing, the District Court Judge granted a preliminary injunction requiring continued performance, and the Circuit Court affirmed, holding that the contractual language clearly required the status quo to continue during the arbitration. The Circuit Court also concluded that the injunction issued by the District Court was, in substance, a final, rather than a preliminary injunction, and that the traditional test for preliminary injunctive relief need not be applied; instead, plaintiff had to show that its ultimate legal position was the correct one. (613 F2d at 471.) This case thus provides no additional support for application of the traditional test by the trial court.
I also note that the contract at issue in Guinness-Harp contained a provision prohibiting termination until a series of procedures, including arbitration, had been followed, and the Agreement at issue here does not. Nonetheless, section 14.08, discussed below, which provides that all of the dispute resolution provisions shall survive the termination of the Agreement, may be read to have the same effect.

. If necessary, the bond shall be modified to include such undertaking.