INTERMAR OVERSEAS, INC., Appellant, v ARGOCEAN S. A. et al., Respondents.

First Department, June 19, 1986

APPEARANCES OF COUNSEL

*I. Michael Bayda* of counsel *(M. Richard Cerick* with him on the brief; *Jacobs Persinger & Parker,* attorneys), for appellant.

*Elisa M. Pugliese* of counsel *(Jack A. Greenbaum* with her on the brief; *Healy & Baillie,* attorneys), for respondents.

OPINION OF THE COURT

FEIN, J.

Plaintiff Intermar Overseas, Inc. (Intermar), a Liberian corporation with its principal place of business in Bermuda,

whose primary asset is the ocean going vessel *M.V. Fortitude,* and defendant Argocean S. A. (Argocean), an Argentine corporation with its principal place of business in Argentina, entered into a written agreement in New York City on May 4, 1984 under which said vessel was leased to Argocean for five years subject to semimonthly payments on terms set forth in the agreement.

The agreement contained an arbitration clause as follows: "That should any dispute arise between Owners and the Charters, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen: their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men cognizant in shipping matters."

By agreement dated May 14, 1984, defendant Andre C. Marcus (Marcus), a citizen and domiciliary of Argentina and the sole shareholder of Argocean, executed in writing an irrevocable unconditional guarantee of Argocean's obligation under the agreement. The guarantee contained no arbitration clause.

By separate agreement, Intermar and its sole shareholder, Calvin Cheng, entered into a joint venture with Argocean and Marcus, calling for the formation of Fortitude Marine Corp., owned 50-50 by Cheng and Marcus. Clause 10 of the joint venture agreement included a broad arbitration clause subjecting all "dispute[s] arising under this Agreement" to arbitration in New York pursuant to the rules of the American Arbitration Association. By separate letter agreement of the same date, Cheng and Marcus agreed, in part, that Intermar was to reimburse Argocean for 50% of any losses up to $175 per day sustained by Argocean in the first two years of the charter party and that Argocean was to reimburse Intermar for 50% of the net profits up to $175 per day in its first two years. The letter agreement does not contain an arbitration clause.

Argocean failed to pay charterhire after August 15, 1985. Intermar declared Argocean in default on August 30, and terminated the charter party for nonpayment on September 5.

Intermar then sought and obtained the subject ex parte order of attachment in the amount of $176,700 plus interest, for a total of $201,738, against Argocean and Marcus. Inter-

mar's ex parte papers asserted that Argocean was not authorized to do business in New York and that Marcus was a nonresident, nondomiciliary, thus authorizing attachment (CPLR 6201).

The Sheriff levied under the attachment, although it does not appear whether the bank accounts levied upon were those of Argocean or Marcus, or jointly owned. Intermar then moved to confirm the attachment. Argocean opposed, arguing that the dispute was subject to arbitration which was covered by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (U.N. Convention; 21 US Treaties 2517) and, therefore, not subject to prearbitration attachment, citing *Cooper v Ateliers de la Motobecane* (57 NY2d 408). Argocean further argued that while Intermar did conduct business in New York, it was barred from maintaining this action, under Business Corporation Law § 1312 (a), because it had not formally qualified to do business in this State. Argocean also contended that plaintiff could not succeed on the merits because its claim was overstated and that Intermar had failed to give defendants credit for various payments, as required by the agreement. Moreover, Argocean alleged that its counterclaims would exceed Intermar's claims. Finally, defendants asserted that there was no in personam or quasi in rem jurisdiction over them as they merely maintained bank accounts in New York and came to New York only to execute the agreements which had been negotiated in full in Argentina. Defendants further asserted that Argocean had demanded arbitration and appointed its arbitrator, requiring that Intermar be compelled to arbitrate and that this matter be stayed pending arbitration.

Special Term denied Intermar's motion to confirm the attachment, granted defendants' request to stay the action and compel arbitration, and directed that the attachment continue only until the arbitration panel was convened. Relying upon *Cooper (supra),* Special Term held that the attachment could not survive the convening of the arbitration panel because of the agreement between Intermar and Argocean to arbitrate. It also held that the same principle applied to Marcus because he had participated in the arbitration albeit he was not subject to the arbitration agreement.

In our view, Special Term erred in relying upon *Cooper (supra).* That case involved a dispute between American and French parties, both of whose Nations were signatories to the U.N. Convention. However, the countries in which the parties

to the agreements here in dispute reside and do business are not signatories to the U.N. Convention. So far as appears, there is nothing in the U.N. Convention which precludes attachment, although it requires that Nations which are signatories provide for enforcement of arbitration awards by the respective countries. The rationale of *Cooper* is that the signatory Nations will appropriately provide for security for such enforcement, without prejudgment attachment. Whatever the effect of those provisions, they cannot be binding in this case. If Intermar is successful, it will have to sue to enforce the arbitration award against defendants in Argentina, a nonsignatory State. Intermar will not have the benefit of the Convention's enforcement provisions. *(See, Fotochrome, Inc. v Copal Co.,* 517 F2d 512, where the benefits of the Convention did not inure before the accession of the United States to the Convention.)

Moreover, Federal law applies, even in this New York State court action, since this is a maritime action *(Lerner v Karageorgis Lines,* 66 NY2d 479). The Federal courts, applying maritime law, have permitted attachment even in cases where arbitration was directed, subject to the U.N. Convention, as noted in *Cooper* and the cases cited therein (57 NY2d, at p 415; *see also,* dissenting opn, at pp 416-417).

Although not applicable to this case, it is notable that the New York State Legislature has amended CPLR 7502, effective January 1, 1986, to allow prejudgment attachment in arbitration cases "but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." (L 1985, ch 253.)

Prior New York cases, relying on *Cooper (supra),* have explicitly noted that the parties to the agreements requiring arbitration were residents of signatory Nations *(Faberge Intl. v Di Pino,* 109 AD2d 235; *Shah v Eastern Silk Indus.,* 112 AD2d 870).

With respect to Marcus individually, he cannot be compelled to arbitrate by virtue of the arbitration clause in the agreement, since there is no arbitration provision in his letter guaranteeing performance *(Production Steel Co. v SS Francois L.D.,* 294 F Supp 200). Marcus has never demanded arbitration, although Special Term concluded that he had participated in the arbitration. Moreover, it is noted that he maintains there is a lack of jurisdiction over him. The U.N. Convention cannot apply to Marcus. Attachment as against his property was proper.

There is no merit to defendants' claim that plaintiff is doing business in New York without having qualified to do so, and thus is barred from bringing this action under Business Corporation Law § 1312. The facts that plaintiff maintains bank accounts in New York and that the default notices emanated from New York, where the agreements were negotiated and executed, are insufficient to require such authorization. Moreover, this defect is curable, if necessary, during the pendency of this action *(Paper Mfrs. Co. v Ris Paper Co.,* 86 Misc 2d 95).

The dispute between the parties as to whether plaintiff's claim is overstated is not a ground for denying attachment. Sufficient appears to indicate that plaintiff's claim has merit and that plaintiff will succeed on the merits and would be entitled to a money judgment against defendants, in excess of all counterclaims (CPLR 6201, 6212 [a]). Defendants' counterclaims have not yet been asserted since defendants have not yet answered.

Defendants' claim that our courts have no jurisdiction over them is also without merit. They came to New York to execute the agreements, and provided for payments to be made and disputes to be arbitrated here. They purposely availed themselves of the privileges of transacting business here *(Hi Fashion Wigs v Hammond Adv.,* 32 NY2d 583). It also appears that the negotiations occurred in New York *(Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443; *Reiner & Co. v Schwartz,* 41 NY2d 648).

Accordingly, the order, Supreme Court, New York County (Hortense Gabel, J.), entered December 2, 1985, denying plaintiff's motion to confirm a prior ex parte order of attachment against defendants, granting defendants' request to compel arbitration of the parties' dispute, staying this action pending such arbitration and directing that the prior order of attachment continue only until the convening of the arbitration panel at which time the attachment was to expire upon settlement of a subsequent order, should be modified, on the law, to the extent of granting plaintiff's motion to confirm the attachment and vacating the first, second and third decretal paragraphs of said order, and as so modified, should otherwise be affirmed, with costs.

KUPFERMAN, J. P., SANDLER, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on December 2, 1985, unanimously modified, on the law, to the

extent of granting plaintiff's motion to confirm the attachment and vacating the first, second and third decretal paragraphs of said order, and as so modified, affirmed. Appellant shall recover of respondents $50 costs and disbursements of this appeal.