DREXEL BURNHAM LAMBERT INCORPORATED, Appellant, v HEINZ RUEBSAMEN, JR., et al., Respondents.

First Department, July 21, 1988

### APPEARANCES OF COUNSEL

*Jeffrey L. Liddle* of counsel *(Paul T. Shoemaker* with him on the brief; *Liddle, O'Connor, Finkelstein & Robinson,* attorneys), for appellant.

*David J. Eiseman* of counsel *(Barry S. Gold* with him on the brief; *Golenbock, Eiseman, Assor, Bell & Perlmutter,* attorneys), for respondents.

*I. Scott Bieler* and *Joan Bianco* of counsel *(A. Robert Pietrzak* and *Brown & Wood,* attorneys), for Securities Industry Association, Inc. and another, *amici curiae.*

### OPINION OF THE COURT

MILONAS, J.

This is a special proceeding pursuant to CPLR 7502 (c) in which petitioner-appellant Drexel Burnham Lambert Incorporated seeks an order of attachment prior to arbitration. It is petitioner's contention that the attachment is required to provide security for a claim by Drexel against respondents Heinz Ruebsamen, Jr., and Werner Ruebsamen in a pending arbitration proceeding. Although the parties agree that the dispute between them will be resolved in arbitration, the locale of the arbitration is not entirely settled. The American Arbitration Association initially decided upon New York as the appropriate forum, but respondents, who insist that the hearing should take place in West Germany, requested reconsideration, and the AAA has now determined that Frankfurt, West Germany, is the appropriate site for the hearing. The purpose of the prospective arbitration is an attempt by Drexel to recover a liquidated debit balance of approximately $230,-000 in a securities account maintained by respondents with Drexel from early 1983 through most of 1987.

The Ruebsamens are citizens of West Germany and opened an account to engage in options transactions with petitioner's office in Brussels, Belgium. Drexel asserts that the Brussels location is merely a sales office, that the trading was actually carried out in the United States, that the securities were kept in New York and that account statements and other account documents were prepared in New York. The account agree-

ment was signed in West Germany, and respondents were authorized thereby to purchase on margin. The relationship between the parties was mutually profitable for some four years, and several small margin calls were promptly satisfied. Then, on Friday, October 15, 1987, the last business day before the precipitous 500 plus drop in the Dow Jones Industrial Average on October 19th, a Drexel representative in Brussels made a $300,000 margin call, and the funds were duly transferred into the account on October 19th although Drexel may not have received the money until October 20th. After the stock market declined on October 19th, causing severe damage to respondents' account, another margin call was placed, this time in the amount of $304,000. While the parties sharply disagree with respect to the telephone conversation between Drexel's broker and respondents' father, who managed the account, the margin call was not expeditiously met, and Drexel liquidated the account. (Petitioner claims that respondents' father stated that the call could not and would not be met whereas respondents charge that they were given a mere 2½ hours, occurring during lunchtime when many German banks are normally closed, to accomplish the transfer.) A debit balance of about $230,000 ensued. It is respondents' contention that because the heaviest selling was done on October 20th, when the market was at its bottom and prior to a subsequent upturn, Drexel is responsible for the debit balance in the account.

Petitioner commenced this proceeding on November 16, 1987 by procuring an ex parte restraining order attaching $250,000 of respondents' assets in a separate and unrelated brokerage account on condition that Drexel post an undertaking in the sum of $12,500. According to petitioner's supporting papers, "[i]nasmuch as Drexel has a valid claim against the Ruebsamens for $230,433.28 and inasmuch as the Ruebsamens apparently are non-residents who have recently suffered substantial losses, it is respectfully submitted that the award to which Drexel is entitled in the arbitration proceeding may be rendered ineffectual unless an order of attachment is granted." Petitioner also alleged that there was an "urgent necessity to obtain security for the award that may be recovered in the arbitration proceeding." Respondents then cross-moved to vacate the temporary restraining order on the ground that there was an insufficient basis for attachment under CPLR 7502 (c) in that Drexel could not show that any future award would be ineffectual without an attachment, that there was no

likelihood of success on the merits and that the court lacked personal jurisdiction over respondents.

Respondents' version of the circumstances surrounding the liquidation of their account was thereafter challenged by petitioner, which asserted an additional basis for the attachment—that West German law precludes enforcement of debts arising out of options and margin trading by nonregistered merchants such as respondents herein. It was, thus, argued that the Ruebsamens' substantial property and assets in West Germany will not serve to protect Drexel in connection with any arbitration award which the latter might obtain. In that regard, while respondents claim that petitioner has known or should have known about this facet of West German law for some time, they do not dispute that the operation of West German law would bar recovery by petitioner in West Germany. Respondents also urge that by choosing to engage in a highly lucrative trading relationship with them, Drexel assumed the risk attendant thereon and should not now be permitted to circumvent the consequences of its decision to do business with citizens of West Germany. Moreover, respondents point out, they themselves have taken no action to undermine any forthcoming arbitration award, such as removing from this jurisdiction their remaining assets in New York.

In denying the petition and dismissing the proceeding (138 Misc 2d 884), the Supreme Court held that the grounds available for attachments in aid of arbitration are limited to the situation described in CPLR 6201 (3), which provides that "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts". Therefore, the court found, the provisional remedy of attachment could be granted only if the prospective arbitration award might become ineffectual because of some act threatened or performed by respondents. The court observed that "[i]n the case at bar, neither the ground advanced in the petition nor the possible impact of German law amounts to action that respondents are taking to render the arbitration award ineffectual" (supra, at 886). The court then proceeded to discern an additional reason for denying the discretionary remedy of attachment. In the view of the court:

"The doctrine of unclean hands should be as much relevant

to the provisional remedy of attachment as it is to the preliminary injunction * * *

"If the German law is in fact what petitioner claims it to be, barring West German non-merchants from trading in options and futures, the application for this attachment, in effect, is an effort to circumvent that law. Indeed, the petitioner, who in its Brussels office accepted this account from respondents, knowing they were West German nationals and residents of Nuremberg, is deemed to have known of the West German prohibition. Therefore, petitioner took a risk, after years of profitable transactions, that a time would come that it could not collect a debit balance against respondents in the courts of their own country."

Although the court thereafter amended its decision to correct its misconstruction of Drexel's explanation of the content of West German law to "barring enforcement of judgments or awards arising from debit balances from trading in options and futures by West German nonmerchants" (supra, 138 Misc 2d, at 886), it did not alter its conclusion concerning the inequity of relieving Drexel from the consequences of the risk which it had assumed.

Pursuant to CPLR 7502 (c): "The supreme court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subdivision (a), may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. The provisions of articles 62 and 63 of this chapter shall apply to the application, including those relating to undertakings and to the time for commencement of an action (arbitration shall be deemed an action for this purpose) if the application is made before commencement, except that the sole ground for the granting of the remedy shall be as stated above."

A plain reading of this provision indicates that, contrary to the interpretation given thereto by the Supreme Court, the language of the statute neither limits an order of attachment in aid of arbitration to the narrow circumstances set forth in CPLR 6201 (3) nor requires that the petitioner demonstrate any affirmative conduct on the part of respondent(s). Indeed, although CPLR articles 62 and 63, wherein they relate to such matters as undertakings and to the time for commencement of

an action, are specifically deemed to apply to an application pursuant to CPLR 7502 (c), the foregoing section explicitly declares that "the sole ground for the granting of the remedy shall be as stated above", and what is stated above is that "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief". Consequently, the possibility that an arbitration award may be rendered ineffectual in the absence of an order of attachment is sufficient under the statute to support provisional relief. Further, it is entirely irrelevant that CPLR 6201 (3) and CPLR 6301 both expressly mandate some sort of affirmative act or "sinister maneuver" as a condition of either an order of attachment or a preliminary injunction and temporary restraining order, respectively, since CPLR 7502 (c) unequivocally specifies that the "sole ground" for granting an order of attachment in connection with an arbitrable controversy is to be ascertained from within the parameters of the provision itself. Thus, CPLR 6201 (3) and CPLR 6301 are simply inapplicable to the instant situation. Therefore, respondents' possible or likely transfer of assets from New York to West Germany, along with petitioner's inability to enforce the arbitration award in West Germany should it ultimately prevail in its claim against respondents, is certainly sufficient to support an order of attachment.

It should be noted, however, that upon a motion to vacate or modify an order of attachment pursuant to CPLR 6223, "the plaintiff shall have the burden of establishing the grounds for the attachment, the need for continuing the levy and the probability that he will succeed on the merits" (subd [b]). In the instant matter, the Supreme Court did not find that the attachment was not needed, only that it was not available, and, in fact, an examination of the record herein reveals that petitioner has adequately established the elements necessary for such provisional relief, including, arguably, the likelihood of success on the merits. Finally, the Supreme Court's theory of unclean hands/assumption of risk must also be rejected. It is not illegal for West German nonmerchants to engage in options trading, and Drexel does not appear to be guilty of any immoral or unconscionable behavior. In addition, it is no more inequitable for petitioner to endeavor to circumvent West German law by seeking to collect in New York the debit balance in the securities account in question than it is for respondents to attempt to avoid the risks of their own options trading by invoking the protection of West German law.

Yet, notwithstanding that petitioner would ordinarily have been entitled to an order of attachment in aid of arbitration under the facts of this case, the order and judgment being appealed here must still be affirmed. The present matter falls squarely within the purview of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (21 UST 2517, reprinted in USCS Administrative Rules of Procedure), as construed by the New York State Court of Appeals in *Cooper v Ateliers de la Motobecane* (57 NY2d 408). Although respondents raise the issue for the first time in connection with the instant appeal, this court deems it appropriate that we now consider the merits since the existing record contains an adequate development of the facts, both parties have fully briefed the subject, and, most significantly, *Cooper v Ateliers de la Motobecane (supra)* is dispositive here. In that case, plaintiff and others entered into a commercial contract with defendant, a French corporation, which agreement provided that certain disputes were to be resolved by arbitration in Switzerland. When a controversy ultimately arose between the parties, defendant demanded arbitration, and plaintiff, while its application for a stay of arbitration was pending in Supreme Court, commenced an action for a money judgment and, in aid thereof, procured an ex parte attachment of a debt owed by a New York corporation to defendant. Plaintiff attempted to confirm the attachment and was opposed by defendant, who moved to dismiss the complaint and vacate the attachment. The Court of Appeals, after discussing the desirability of arbitration in the context of international trade, particularly in preference to litigation, referred to "the injection of uncertainty—the antithesis of the UN Convention's purpose—that would occur by permitting attachments and judicial proceedings. Once again, the foreign business entity would be subject to foreign laws with which it is unfamiliar" *(supra,* at 414).

Accordingly, "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed" (Convention on Recognition and Enforcement of Foreign Arbitral Awards, art II, § 3, 21 UST 2517, 2519, reprinted in USCS Administrative Rules of Procedure). Moreover, foreign arbitration awards are to be enforced on the same terms as domestic

awards *(see,* Convention on Recognition and Enforcement of Foreign Arbitral Awards, art III, 21 UST 2517, 2519, reprinted in USCS Administrative Rules of Procedure). In the opinion of the Court of Appeals, citing *McCreary Tire & Rubber Co. v CEAT* (501 F2d 1032), the Third Circuit therein "ruled that the language 'refer the parties to arbitration' (USCS Administrative Rules, Foreign Arbitral Awards Conv, art II, § 3) precludes the courts from acting in any capacity except to order arbitration, and therefore an order of attachment could not be issued. To hold otherwise would defeat the purpose of the UN Convention" *(Cooper v Ateliers de la Motobecane, supra,* at 414). This court, relying upon the authority of *Cooper v Ateliers de la Motobecane (supra),* has held that in instances in which the UN Convention is applicable, the "arbitration is governed by the UN Convention, and pursuant to the terms thereof, we find that prejudgment attachment is prohibited. It was the intention of the UN Convention that there should be no significant judicial intervention until *after* an arbitration award is made" *(Shah v Eastern Silk Indus.,* 112 AD2d 870, 871; *see also, Faberge Intl. v Di Pino,* 109 AD2d 235).

All of the requirements for activating the UN Convention are present here. There is a written agreement to arbitrate between petitioner and respondents; the site of the arbitration is to be either West Germany, Belgium or the United States, all of which are signatories to the Convention. In addition, the account agreement in question created a legal commercial relationship, and the Ruebsamens are West German citizens. Therefore, this court is constrained by *Cooper v Ateliers de la Motobecane (supra)* to find that prearbitration attachment is not available to Drexel. Petitioner, besides expressing severe criticism of that decision, endeavors to distinguish the situation therein from the one before us now, stating that the instant matter is analogous to the one in *Intermar Overseas v Argocean* (117 AD2d 492). However, in *Intermar Overseas v Argocean (supra),* "the countries in which the parties to the agreements here in dispute reside and do business are not signatories to the U.N. Convention" (at 495-496). The court also noted that "Federal law applies, even in this New York State court action, since this is a maritime action *(Lerner v Karageorgis Lines,* 66 NY2d 479). The Federal courts, applying maritime law, have permitted attachment even in cases where arbitration was directed, subject to the U.N. Convention, as noted in *Cooper* and the cases cited therein" *(supra,* at 496).

In the view of petitioner, the holding in *Cooper v Ateliers de*

*la Motobecane (supra)* is internally contradictory in that it neither refuted nor distinguished several decisions which determined prearbitration attachments in maritime cases to be consistent with the UN Convention, and the language of the Convention makes no distinction between maritime and other types of arbitration. Yet, regardless of the validity of this assertion, the fact remains that this court is bound by *Cooper v Ateliers de la Motobecane (supra)* which carves out an exception to its ruling insofar as maritime law is involved. As for Drexel's principal point, that while the rationale in *Cooper v Ateliers de la Motobecane (supra)* may be sound for certain situations under the Convention, it does not apply where, as here, the arbitration award would be unenforceable in the foreign jurisdiction because it is against the public policy of that country, the Court of Appeals seems to have disposed of that argument as well in *Cooper v Ateliers de la Motobecane (supra)*. The court, after distinguishing therein a series of Federal maritime cases from the matter before it, stated that only in *Carolina Power & Light Co. v Uranex* (451 F Supp 1044) did a court allow attachment in a matter not dealing with a maritime contract falling under the UN Convention. The Court of Appeals then proceeded to observe that the court in *Carolina Power & Light Co. v Uranex (supra)* rejected the reasoning in *McCreary Tire & Rubber Co. v CEAT (supra)* "that it must divest itself of jurisdiction. Instead, concerned that the plaintiff would be unable to enforce an eventual arbitral award, the District Court approved the security attachment, a rationale that, as discussed above, *is not compelling*" *(Cooper v Ateliers de la Motobecane, supra,* at 415; emphasis added).

Consequently, the order and judgment (one paper) of the Supreme Court, New York County (Stephen G. Crane, J.), entered on March 17, 1988, which, *inter alia,* denied the petition and dismissed the proceeding for an order of attachment pursuant to CPLR 7502 (c), should be affirmed, with costs and disbursements.

KUPFERMAN, J. P., CARRO, ELLERIN and WALLACH, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on March 17, 1988, unanimously affirmed. Respondents shall recover of appellant $75 costs and disbursements of this appeal.