**CONTICHEM LPG, a division of ContiGroup Companies, Inc., Petitioner–Appellant,**

v.

**PARSONS SHIPPING CO., LTD., Respondent–Appellee,**

**Den Norske Bank ASA, Intervenor–Appellee.**

**No. 99–9406.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 7, 2000.

Decided: Oct. 11, 2000.

Anthony J. Mavronicolas, Hill Rivkins & Hayden, LLP, NY, NY, for Petitioner–Appellant.

Armand M. ParÉ, Jr., Nourse & Bowles, LLP, NY, NY, for Respondent–Appellee.

Before: CALABRESI, CABRANES and POOLER, Circuit Judges.

POOLER, Circuit Judge:

ContiChem LPG ("ContiChem") appeals from the October 27, 1999, Memorandum and Order of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge*) denying its motion for a preliminary injunction and for an order of attachment and granting respondent Parsons Shipping, Ltd.'s ("Parsons' ") motion to vacate the temporary restraining order and order of maritime attachment granted October 13, 1999. ContiChem primarily argues that the district court's refusal to grant provisional remedies in aid of arbitration under New York Civil Practice Law and Rules ("C.P.L.R.") 7502(c) on the ground that no arbitration was pending in New York was erroneous. Furthermore, ContiChem contends that the district court improperly denied provisional remedies under C.P.L.R. 6201 and 6210 on the ground that there was no judgment debtor involved. Finally, ContiChem maintains that it was entitled to a maritime attachment under Admiralty Supplemental Rule B(1). For the reasons set forth below, we reject ContiChem's contentions and affirm the order of the district court.

## BACKGROUND

At the root of this dispute is ContiChem's attempt to obtain security in New York for damages resulting from a breach of a charter party. We are asked to consider whether ContiChem could avail itself of state law provisional remedies in aid of arbitration when no arbitration was pending in New York; the parties had expressly agreed in the charter party to arbitration in London; and ContiChem used a temporary restraining order and attachment order to secure funds that could not otherwise be reached by a maritime attachment.

On August 14, 1999, ContiChem and Parsons entered into a charter party for the ship M/V World Rainbow. Under the charter party, Parsons agreed to deliver its ship to ContiChem at ContiChem's nominated port of Ras Tanura, Saudi Arabia for a voyage in which it would carry 40,500 metric tons of cargo for ContiChem. Parsons, the owner of the ship, warranted the vessel's "being seaworthy and having all pipes, pumps and compressors, boiler coils in good working order, and being in every respect fitted for the voyage." The charter party specified "[t]he place of General Average and arbitration proceedings to be London." The underlying breach of charter party claim stems from ContiChem's contentions that Parsons' vessel was unseaworthy and its tanks were unable to cool down sufficiently to enable loading of ContiChem's cargo. This problem delayed loading, which allegedly resulted in damages to ContiChem of $2,955,143.

ContiChem attempted to obtain security for its claims in a number of ways. First, ContiChem had the M/V World Rainbow arrested while at anchorage in Yosu, South Korea. Although the assessed value of the ship was $1.95 million, it was encumbered by a first preferred mortgage of $5 million and a second preferred mortgage of $1.3 million, both in favor of Den Norske Bank ASA ("Den Norske").

Next, on October 13, 1999, ContiChem petitioned the United States District Court for the Southern District of New York for an order pursuant to 9 U.S.C. § 1 *et seq.* compelling Parsons to proceed with arbitration in London. ContiChem also sought an order of attachment pursuant to Sup-

plemental Admiralty Rule B(1) of Parsons' bank accounts as security for its arbitration claim against Parsons. ContiChem stated that it was due to make a $722,145.09 telephonic transfer to Unibank, S.A., one of the banks from which attachment was sought, for the benefit of Parsons' agent. ContiChem also sought a temporary restraining order and/or preliminary injunction prohibiting garnishee Unibank from transferring Parsons' assets out of the district pending arbitration. In the alternative, ContiChem sought a temporary restraining order and preliminary injunction pursuant to the equitable and discretionary powers of the court under the common law and Rules 64 and 65 of the Federal Rules of Civil Procedure.

On October 13, 1999, the district court issued an order directing Parsons to show cause before the court on October 25, 1999, why an order should not be issued pursuant to Rules 6201, 6210 and 7502(c) of the C.P.L.R. and Federal Rule of Civil Procedure 65(b) temporarily restraining garnishee Unibank from transferring Parsons' money out of the district. The court issued a temporary restraining order that prohibited Unibank from transferring or removing Parsons' property from the district pending the October 25 hearing. The court further ordered service of maritime attachment and garnishment on Unibank, so as to prevent removal of Parsons' property from the district. The following day ContiChem served the temporary restraining order on Unibank. ContiChem advised Unibank that it was due to make a freight payment to Parsons' agent's account there, but that Unibank could not transfer those funds to Den Norske due to the temporary restraining order it had served. Thereafter, ContiChem wired the freight payment to Unibank and later served the process of maritime attachment on Unibank.

Finally, one day after serving the order to show cause, ContiChem also sought to freeze assets of Parsons in London.

Upon Parsons' request, the return date of the motion in New York was accelerated and the district court conducted a hearing on October 22, 1999. On that date, Den Norske moved by order to show cause to intervene, claiming that it was entitled to the restrained funds. Parsons and Den Norske asked the district court to vacate the temporary restraining order as well as the order of maritime attachment. In its Memorandum and Order of October 27, 1999, the district court determined that it was without equitable power to grant the relief ContiChem sought because it had no judgment against Parsons. *See In the Matter of the Arbitration Between ContiChem LPG and Parsons Shipping, Ltd ("ContiChem")*, 1999 WL 977364, at *2 (S.D.N.Y. Oct.27, 1999). Pursuant to Supplemental Rule B(1) relating to maritime and admiralty claims, Judge McKenna then considered whether an order of attachment and/or injunctive relief were permissible under New York law. The district court concluded that ContiChem was not entitled to an order of attachment or a temporary restraining order under C.P.L.R. 6201 and 6210 because "petitioner was not a judgment debtor." *Id.* In addition, the district court concluded that ContiChem could not avail itself of C.P.L.R. 7502(c), which authorizes a court to consider an application for an order of attachment or for a preliminary injunction in conjunction with an arbitrable controversy, because the underlying dispute was arbitrable in the United Kingdom. *See id.* Therefore, the district court denied petitioner's motion for a preliminary injunction and order of attachment and granted Parsons' motion to vacate both the temporary restraining order and maritime attachment order issued on October 13, 1999. *See id.* at *3. ContiChem now appeals.

## DISCUSSION

### I. Standards

We first address Parsons' contention that we do not have appellate jurisdiction in this case because the district court's

order vacating the temporary restraining order is not appealable. According to ContiChem, appellate jurisdiction is based on the district court's order vacating the order of maritime attachment and denying a preliminary injunction. In addition, ContiChem claims that regardless of the label appended to it, the order is appealable because it conclusively determined whether ContiChem could hold security in New York pending arbitration of its claims in London and the order of attachment would be otherwise unreviewable since the merits of the underlying claim would be adjudicated in London.

■ We agree with Parsons that the district court's order vacating the temporary restraining order is not appealable. *See Romer v. Green Point Sav. Bank,* 27 F.3d 12, 15 (2d Cir.1994) ("As a TRO is interlocutory and is not technically an injunction, it is ordinarily not appealable."). It is only in limited circumstances, when the action "might have a serious, perhaps irreparable, consequence and [ ]the order can be effectually challenged only by immediate appeal" that we may exercise appellate jurisdiction. *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (internal quotations marks omitted). Because those circumstances do not exist here, we lack jurisdiction over that portion of the appeal challenging vacatur of the temporary restraining order. Therefore, our review in this case is limited to determining whether the district court abused its discretion in vacating the maritime attachment order and denying provisional remedies under state law. "Errors of law or fact may constitute such abuse." *SG Cowen Securities Corp. v. Messih,* 224 F.3d 79, 81 (2d Cir.2000).

■ As a preliminary matter, we agree with the district court's determination that because ContiChem did not have a judgment against Parsons, the court had no equitable power to issue a preliminary injunction preventing any entity from disposing of Parsons' assets pending arbitra-

tion of the dispute. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 333, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (district court is without power pursuant to Federal Rule of Civil Procedure 65 to order injunctive relief preventing party from disposing of assets pending adjudication of contract claims for money damages). Absent a prior judgment, the district court properly denied ContiChem's request. However, ContiChem also sought relief pursuant to Supplemental Rule B(1) of the Rules for Certain Admiralty and Maritime Claims, which supplement the Rules of Civil Procedure. Rule B(1) provides for prejudgment maritime attachment and garnishment in maritime in personam actions. In addition, Rule B(1) authorizes a plaintiff pursuant to Federal Rule of Civil Procedure 4(e) to "invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property." Supp. Rule B(1). We first consider whether the district court properly refused to grant pre-arbitration remedies under state law and then turn to federal law.

## II. Relief

### A. State Remedies

ContiChem rests its claim to provisional remedies partly on C.P.L.R. 7502, under which a court may consider an application for an attachment order or preliminary injunction in connection with an arbitrable controversy. Specifically, Rule 7502(c) provides:

The supreme court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subdivision (a), may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. The provisions of articles 62 and 63 of this chapter shall

apply to the application, ... except that the sole ground for the granting of the remedy shall be as stated above.

N.Y. C.P.L.R. 7502(c). Although the district court initially granted ContiChem's request for a temporary restraining order and order of attachment on October 13, 1999, it subsequently vacated the temporary restraining order, concluding that C.P.L.R. 7502(c) applies only to arbitration proceedings in New York. *See ContiChem,* 1999 WL 977364, at *2.

ContiChem asks this court to vacate that decision on the ground that the district court interpreted Rule 7502(c) too narrowly and unduly restricted its application to cases in which arbitration proceedings are pending in New York, in contravention of the language of the statute, the legislative history and spirit of the New York Arbitration Act, and case law. According to ContiChem, the district court ignored the language of Rule 7502(a), which supplies a specific venue provision:

> A special proceeding shall be used to bring before a court the first application arising out of an arbitrable controversy which is not made by motion in a pending action. The proceeding shall be brought in the court and county specified in the agreement; or, if none be specified, in a court in the county in which one of the parties resides or is doing business, or, if there is no such county, in a court in any county; or in a court in the county in which the arbitration was held.

N.Y. C.P.L.R. 7502(a) (repealed by 2000 Session Laws of New York Ch. 226, which substituted a new subdivision (a) that would not alter the outcome of this appeal). ContiChem juxtaposes this provision with its assertion that ContiChem's parent company maintains offices in New York County and, with little other effort to connect those two pieces of information, contends that it satisfied the venue provisions of the statute. Parsons responds that C.P.L.R. 7502(c) is restricted by its terms to provisional remedies ordered by a "court in the county in which an arbitration is pending, or, if not yet commenced, in a county specified in subdivision (a)." Here, Parsons maintains, the parties "specified" that arbitration would take place in London, thus rendering subdivision (c) inapplicable and subdivision (a) irrelevant.

ContiChem assumes that C.P.L.R. Article 75 is available to it, even though it agreed to arbitrate its disputes with Parsons in London pursuant to an arbitration agreement that is subject to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* ("Convention"). However, these facts raise several issues that must be considered in turn. In analyzing ContiChem's claim for relief under Rule 7502(c), it is helpful to step back and consider the landscape of rules before us. In New York, the leading case on attachments in aid of arbitration is *Cooper v. Ateliers de la Motobecane, S.A.,* 57 N.Y.2d 408, 456 N.Y.S.2d 728, 442 N.E.2d 1239 (1982). In *Cooper,* the New York Court of Appeals refused to grant a pre-arbitration attachment in an international matter involving litigants governed by the Convention, finding that pre-award remedies violated the Convention. *See id.* at 416, 456 N.Y.S.2d 728, 442 N.E.2d 1239. However, the New York Court of Appeals noted federal arbitration law "specifically permits attachment to be used in admiralty cases." *Id.* at 415, 456 N.Y.S.2d 728, 442 N.E.2d 1239. ContiChem seizes on the apparent exception for maritime cases to argue that *Cooper* is not a barrier to application of C.P.L.R. Article 75.

■ While that may be true, it is not dispositive. The fact that *Cooper* may not be a barrier does not mean that ContiChem is automatically entitled to relief under Rule 7502(c). ContiChem blurs the lines between the domestic arbitrations governed by Article 75 and the foreign arbitration cases in which pre-arbitration remedies may, in limited circumstances, be

available.[1]  Clearly, if this case did not involve a maritime attachment, *Cooper* would govern and prohibit pre-arbitration attachment in a case governed by the Convention. *See id.,* at 416, 456 N.Y.S.2d 728, 442 N.E.2d 1239.  On the other hand, if this case involved a domestic arbitration, not governed by the Convention, we would have little trouble concluding that Rule 7502(c) was available to ContiChem, provided it otherwise satisfied the statute's requirements.  In this case, however, ContiChem seeks a maritime attachment in aid of a foreign arbitration governed by the Convention, which raises the issue of whether the exception set forth in *Cooper* for provisional relief in aid of maritime arbitration also permits relief under the state law provisions at issue here.  However, we need not directly address this issue, because even if *Cooper* is not a bar to the application of Rule 7502(c) here, ContiChem cannot avail itself of this provision because it is limited to domestic arbitrations and ContiChem and Parsons explicitly agreed to arbitration in London.

ContiChem's appeal to the legislative history and spirit of the New York arbitration statute is also unavailing.  ContiChem passionately contends that the district court's "parochial" reading of Rule 7502(c) "clearly undermines the policy" of New York's arbitration statute, which was promulgated in an effort to reverse the common law's longtime hostility to arbitration.  ContiChem urges that the district court's narrow interpretation of the statute would thwart the arbitration process by prohibiting parties from obtaining security when an arbitration award otherwise might be rendered ineffective.

As Parsons points out, the legislative history of C.P.L.R. 7502(c) reinforces that relief under that rule is available only for domestic arbitrations.  The Advisory Committee notes to C.P.L.R. 7502(c) reflect the drafters' intent not to affect proceedings governed by international agreements such as the Convention.  The Advisory Committee specifically stated that:

> there is no inconsistency between the proposed amendment [7502(c) ] and the decision of the Court of Appeals in *Cooper v. At[e]liers De La Motobecane, S.A.,* 57 N.Y.2d 408, 456 N.Y.S.2d 728, 442 N.E.2d 1239 (1982), where a pre-arbitration attachment was disallowed in a matter involving international litigants governed by the United Nations Convention in Recognition and Enforcement of Foreign Arbitral Awards.  The amendment would not affect proceedings governed by such international agreements [i.e. the Convention].

1985 Report of the Advisory Committee on Civil Practice, *reprinted in* McKinney's 1985 Session Laws at 3432 (footnote omitted).  Thus, although C.P.L.R. 7502(c) was enacted after *Cooper*, it was not intended to eviscerate *Cooper*.  *See Drexel Burnham Lambert, Inc. v. Ruebsamen,* 139 A.D.2d 323, 531 N.Y.S.2d 547, 551–52 (1st Dep't 1988).  Perhaps even more compelling in this case is the Committee's explicit reference to domestic arbitration.  Rule 7502(c), "by providing the preliminary relief of attachment or injunction *only* if the arbitration award might otherwise be rendered ineffectual, is designed to make the domestic arbitration remedy more efficacious, and ... accords with the spirit of the *Cooper* decision."  1985 Report of the Advisory Committee on Civil Practice, *reprinted in* McKinney's 1985 Session Laws at 3432.  Therefore, contrary to ContiChem's assertion, the legislative history of Rule 7502(c) supports the plain language of the statute, which precludes courts ap-

---

1. Moreover, ContiChem argues that this court's decision in *Borden, Inc. v. Meiji Milk Products Co.,* 919 F.2d 822 (2d Cir.1990), demonstrates this court's willingness to grant provisional remedies even in a case where the Convention applies.  In *Borden,* we held that the district court had subject matter jurisdic-

tion to consider an application for preliminary injunction in aid of arbitration and "[e]ntertaining an application for such a remedy, moreover, is not precluded by the Convention but rather is consistent with its provisions and its spirit."  *Id.* at 826.

plying New York law from considering provisional remedies in aid of foreign arbitrations.

In sum, we conclude that although this case involves a maritime attachment, and *Cooper* is therefore not necessarily a bar to relief, ContiChem nevertheless is not entitled to provisional remedies in aid of arbitration under C.P.L.R. 7502(c) because this is not a domestic arbitration. The charter party in this case specifically provided for arbitration of disputes in London, and Rule 7502 by its terms applies only to domestic arbitrations. Therefore, we reject ContiChem's attempt to expand the purview of this statute beyond the limits of its language and affirm the district court's conclusion that C.P.L.R. 7502(c) does not permit provisional remedies in aid of a maritime arbitration in London.

■ Rule 7502(c) states that "[t]he provisions of articles 62 and 63 of [the C.P.L.R.] shall apply to the application" for relief in aid of arbitration, provided that the award otherwise would be rendered ineffective.[2] In this case, the district court vacated the temporary restraining order it had granted pursuant to Rule 6210 on the ground that ContiChem was not a judgment debtor. *See ContiChem,* 1999 WL 977364 at *2. As we noted above, we are without jurisdiction to consider the order vacating the temporary restraining order. Moreover, ContiChem did not assert an independent basis for seeking attachment under Article 62. It necessarily concedes that "[p]rocedurally, C.P.L.R. § 7502(c) specifically incorporates articles 62 and 63 of the C.P.L.R. as the procedural mechanism for obtaining the provisional remedies in aid of arbitration of C.P.L.R. § 7502(c)." ContiChem nevertheless asserts that it was entitled to an attachment order under Rule 6210 because C.P.L.R. 6202 modified the definition of garnishee in the context of attachments, so as to make Unibank a proper garnishee even though there was no extant judgment. Having determined that ContiChem cannot bring an application under Rule 7502 because it agreed to arbitration in London, we also find that it cannot seek attachment under Rule 6210, because the court cannot entertain the Rule 7502 application.

## B. Federal Remedies

■ ContiChem also appeals the district court's order vacating the order of maritime attachment it granted pursuant to Supplemental Rule B on October 13, 1999. We now consider whether it was within the court's discretion to do so once it determined that the temporary restraining order that kept Parsons' money in the district was invalid. In essence, we must determine whether ContiChem could accomplish indirectly, by means of an order restraining to-be-attached property, that which it could not do directly in light of the well-established prohibition against maritime attachments of after-acquired property. *See Reibor International Ltd. v. Cargo Carriers (KACZ–CO.) Ltd.,* 759 F.2d 262, 268 (2d Cir.1985).

■ "Maritime attachment is by any test a characteristic feature of the general maritime law." *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.,* 85 F.3d 44, 47 (2d Cir.1996) (internal quotation marks omitted). " '[T]he use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty ... has prevailed during a period extending as far back as the authentic history of those tribunals can be traced.' Rule B is simply an extension of this ancient practice" *Id.* at 47–48 (quoting *Atkins v. Fibre Disintegrating Co.,* 85 U.S. (18 Wall.) 272, 303, 21 L.Ed. 841 (1873)). Rule B(1) pro-

---

**2.** New York C.P.L.R. 6210 provides in part: "Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as provided in subdivision (b) of section 6214." A "garnishee" is defined in part as "a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest." N.Y. C.P.L.R. § 105(i).

**434**

vides that "[w]ith respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees ... if the defendant shall not be found within the district." Supp. Rule B(1). Although a plaintiff seeking attachment must supply, along with its verified complaint, an affidavit stating that defendant cannot be found within the district, little else is required and there need only be a hearing after the attachment is served. *See* Rule B(1). However, Rule B(1) relief is not valid where the attachment and garnishment is served before the garnishee comes into possession of the property. *See Reibor,* 759 F.2d at 263, 268.

In *Reibor,* we considered as a matter of first impression whether maritime garnishments can extend to property not yet in the hands of the garnishee. *See id.* In an action claiming breach of a shipowner's obligations under its charter, Reibor sought to attach funds to be paid by a third party to the shipowner at a bank in New York. The third party had issued instructions to the bank to remit a portion of the payment to a bank in Montreal. Finding no controlling admiralty rule, the *Reibor* court adopted the New York rule that an attachment is void unless the garnishee is in possession of property belonging to the defendant or owes a debt to the defendant at the time the order is served. *See id.* at 266 (citing C.P.L.R. 6214(b); McLaughlin, Practice Commentaries, C6214:3). The *Reibor* court noted the special considerations involved in bank transfers where allowing maritime attachment and garnishment before the bank receives the funds would disrupt the free flow of commerce by forcing banks to "search high and low ... to determine whether any transfer related to a maritime process of attachment." *Id.* at 268.

*Reibor* governs here. After other unsuccessful attempts at obtaining security, ContiChem attempted to obtain security in New York for its arbitration claim in London by attaching Parsons' funds in Unibank. ContiChem alleged in its petition to the district court that its attempts to obtain security after arresting the M/V World Rainbow had failed. However, ContiChem also stated that it was "due to make a freight payment in the amount of $722,145.09 via telephonic transfer to an account at Unibank A/S, 13–15 West 54th Street, New York, New York, for the account of Den Norske Bank ASA, London Branch, as agent for Beckworth Enterprises, Inc. who are the managers of the M/V World Rainbow." Without the relief ContiChem requested, Parsons' funds would be removed from the jurisdiction, as Unibank would automatically transfer them to Den Norske in London. In addition, ContiChem could locate no other assets of Parsons in New York and Parsons did not have offices or an agent for service of process in New York.

The district court properly vacated the attachment order. We hold that ContiChem improperly attempted to circumvent the rule against attachment of property not yet in Unibank's possession, *see Reibor* 759 F.2d at 268, by using a temporary restraining order that the court subsequently found had been issued in error to prohibit the transfer of Parsons' funds out of the district; making a payment to Unibank; and, once the funds ceased to be a moving target, serving the maritime attachment and garnishment. In seeking to attach Parsons' funds, ContiChem could not escape the rule in *Reibor.* If ContiChem made the freight payment to Unibank first, before obtaining the attachment order, Unibank would automatically transfer the funds to Den Norske in London, pursuant to already existing transfer instructions, and the funds would be gone. Under *Reibor,* however, ContiChem could not serve the attachment and garnishment order on Unibank when the bank was not yet in possession of the funds. To circumvent this problem, ContiChem sought, and the district court granted, a temporary

restraining order prohibiting Unibank from transferring Parsons' money out of the district. The district court later learned that ContiChem served the temporary restraining order on Unibank prior to wiring its freight payment. ContiChem informed Unibank that it was going to wire its freight payment, but that Unibank should not transfer the funds to Den Norske due to the temporary restraining order. After it wired the funds, Conti-Chem served the order of attachment and garnishment, and it thus halted what otherwise would have been an instantaneous transfer of funds out of the district.

We conclude that it was well within the district court's discretion to vacate the maritime attachment and garnishment order, having determined that it had erroneously issued the temporary restraining order that anchored the funds in New York. Absent the temporary restraining order, which the district court vacated and whose vacatur we lack power to review, there could be no attachment of funds in this case under *Reibor*. Therefore, the district court properly vacated the order of attachment. Although ContiChem's attempt to obtain security in New York failed, Conti-Chem is not without recourse to seek relief by appropriate means in an appropriate jurisdiction.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying petitioner's request for a preliminary injunction and order of attachment and vacating the attachment order issued on October 13, 1999.