In the Matter of the Arbitration between BENJAMIN J. DENIHAN et al., Respondents, and MICHAEL G. DENIHAN, Appellant.

First Department, August 21, 1986

APPEARANCES OF COUNSEL

*Alan M. Lebensfeld* of counsel *(Jack B. Levitt* with him on the brief; *Cooperman, Levitt & Winikoff, P. C.,* attorneys), for appellant.

*Edmund F. Wolk* for 3 Mitchell Place, Inc., respondent.

*Edmund F. Wolk* of counsel *(Julius Mager,* attorney), for Benjamin J. Denihan and others, respondents.

## OPINION OF THE COURT

SANDLER, J. P.

Michael G. Denihan, respondent-appellant, appeals from an order and judgment of the Supreme Court, New York County (Kenneth Shorter, J.), entered December 5, 1985, which granted the petitioners' application to stay an arbitration demanded by appellant-respondent on his claim that a proposed plan of liquidation of the assets of 3 Mitchell Place, Inc. (Corporation) violated his rights under a shareholders' agreement, and dismissed the cross petition for an injunction without prejudice.

The principals in this lawsuit, the latest in a series of ongoing controversies, are Michael G. Denihan, owner of 25% of the shares of the corporation, and his older brother Benjamin J. Denihan, the effective leader of a group of stockholders who own 75% of the shares. Until April 1970, the two brothers were in effect partners in a group of real estate and other businesses owned and operated by them, in some cases with other members of the family. The older brother was the dominant force in the several enterprises. As a result of disputes between them, and following extended negotiations, a series of transactions were consummated pursuant to which they separated all of their business interests, with the single exception of the Corporation, owner of the Beekman Tower Hotel. As to that Corporation, the parties negotiated a shareholders' agreement, dated January 1, 1969, but executed on or about April 1, 1970, which appears to have been meticulously drafted to protect Michael's interests as a minority shareholder.

As relevant to the issue with which we are concerned,

paragraph 4 of the shareholders' agreement sets forth promises that the Corporation would not undertake certain actions without Michael's "prior express written approval". In particular it was agreed that the Corporation would not, without such approval, "(v) sell all or substantially all of Corporation's assets, or merge, consolidate or liquidate except * * * pursuant to a transaction in which MG shares in any direct or indirect benefit accruing to the other shareholders in the same proportion as MG's share of Common Stock bear to all of Corporation's Common Stock then issued and outstanding, including, but not limited to, formation of a partnership as successor to the business and property of the Corporation".

Paragraph 11 of the agreement provided that "[a]ny claims, difference, dispute or question of interpretation arising under this agreement shall be determined solely and exclusively by arbitration pursuant to the rules then obtaining of the American Arbitration Association in New York City."

The years that followed were marked by repeated claims by Michael (two of which were the subject of completed arbitrations) that the majority shareholders were persistently violating his rights under the shareholders' agreement. In the two arbitrations addressing such claims that have been completed, both sustained, in essence, his claims that the majority shareholders had violated his rights. On another occasion, a proposal, without his consent, to refinance an existing mortgage was abandoned after a court enjoined the proposed refinancing pending arbitration of the claim. In addition, an earlier proposed plan to sell the assets of the Corporation, alleged without contradiction to be essentially the same as that with which we are now concerned, was abandoned by the majority shareholders after Michael demanded arbitration. Another arbitration addressed to other claims of Michael is now pending.

The immediate issue was precipitated when the petitioners, by notice of a shareholders' meeting, dated May 20, 1985 (approved by the board of directors, but without the consent of Michael), called a special meeting of the shareholders of the Corporation for the purpose of approving a resolution to dissolve and liquidate the Corporation and sell its assets and properties at public auction at which the shareholders would be permitted to bid.

By notice dated June 20, 1985, Michael demanded arbitration of his claim that the proposed liquidation of the Corpora-

tion and sale of its assets and properties constituted "a scheme to improperly 'squeeze out' the claimant as a minority shareholder of the Corporation, in derogation of respondents' fiduciary duties and obligations under the Shareholders Agreement." He further alleged that the petitioners intended to " 'buy' the Corporation's assets and properties at a price far less than the fair market value, and then to resume operation of the Beekman Tower, albeit without the constraints of the Shareholders Agreement."

Petitioners then commenced this proceeding to stay the arbitration maintaining that the plan did not require Michael's prior express written approval since it met the alternative requirement of being "a transaction in which MG shares in any direct or indirect benefit accruing to the other shareholders in the same proportion as MG's shares of Common Stock bear to all of the Corporation's Common Stock." Michael cross-petitioned for a preliminary injunction in aid of arbitration, detailing in the accompanying papers what he claimed to be the history of petitioners' persistent efforts to violate his rights under the shareholders' agreement.

Concluding that the proposed plan of liquidation was in accord with the procedure authorized under the shareholders' agreement for selling the assets of the Corporation without the consent of the minority shareholder, and that the requested injunctive relief was based on apprehensions of misconduct in carrying out the plan that had not yet occurred and was, accordingly, at best premature, Special Term granted the petition staying the arbitration and denying the cross petition seeking an injunction against the proposed auction sale.

What becomes apparent from a study of Special Term's opinion is that the issues were decided on the basis of a determination, not that an arbitrable issue had not been presented, but rather on the basis of the court's judgment that the issue presented lacked merit. In so deciding the questions presented, Special Term departed from the statutory direction in CPLR 7501 that: "In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute."

The definitive statement of the court's role in determining whether or not an issue is arbitrable was set forth in *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.* (37 NY2d 91).

The court there said (at p 95): "Generally it is for the courts to make the initial determination as to whether the dispute is arbitrable * * * The ultimate disposition of the merits is of course reserved for the arbitrators and the courts are expressly prohibited from considering 'whether the claim with respect to which arbitration is sought is tenable, or otherwise pass[ing] upon the merits of the dispute' * * * Ideally then the courts should confine themselves to the arbitration clause and leave the overall contract to the arbitrators."

Going on to discuss the responsibilities of courts confronted with a broad arbitration clause, the court stated (supra, at p 96): "[A]lthough the courts and the arbitrators in these cases cover the same field, they perform very different functions. Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended. Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration".

In a more recent Court of Appeals decision, the essence of the principle set forth in the *Nationwide* case *(supra)* was succinctly phrased as follows: "Since the parties agreed to submit the merits of their disputes to arbitration, the courts should not stay arbitration upon the ground that a claim is meritless for it is precisely that issue which the arbitrator is to decide." *(Matter of Franklin Cent. School [Franklin Teachers Assn.],* 51 NY2d 348, 356.)

As Special Term's opinion makes clear, he decided the issue presented by the petition for a stay by looking, not at the arbitration clause, but rather at the substantive provisions of the agreement in issue, and concluding that the proposed plan was authorized under the agreement. In deciding the issue in this manner, clearly contrary to the specific mandate of CPLR 7501 and to the established rules governing the issue presented, Special Term followed precisely the judicial approach adopted in the well-known *Cutler-Hammer* case *(Matter of International Assn. of Machinists [Cutler-Hammer, Inc.],* 297 NY 519). In *Cutler-Hammer,* the court held in substance that a provision in a collective bargaining agreement providing for

a meeting to discuss payment of a bonus did not give rise to an arbitrable issue as to whether the employers were obligated to pay the bonus. It was this decision that led to the adoption of the explicit, unambiguous statutory direction quoted earlier that "the court shall not consider whether the claim with respect to which arbitration is sought is tenable" (CPLR 7501).

When the issue is approached in accordance with the now well-established controlling principles, it seems to me clear that the claim that the proposed plan of liquidation violated Michael's rights under the shareholders' agreement bears "a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract." *(See, Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., supra,* at p 96.) Or looked at in terms of the broad arbitration clause in the shareholders' agreement, it is clear that Michael has set forth a "claim" arising under the agreement, that it states a "difference" or "dispute" arising under the agreement, and that it presents a "question of interpretation" arising under the agreement. Indeed, contrary to Special Term's apparent view, it is by no means an extraordinary notion that the relevant clause of the agreement might reasonably be interpreted as interdicting a public auction, without Michael's consent, at which the majority shareholders would be permitted to make a bid for the assets of the corporation, on the view that such a procedure has a significant potential for impairing rights that were intended to be preserved under the contract.

Once it is accepted that the issue posed is arbitrable and that it was an error to stay the arbitration, it follows under the circumstances presented that an injunction in aid of the arbitration process is warranted. It is clear that in the absence of an injunction pending the arbitration, the award to which Michael may be entitled "may be rendered ineffectual". *(See,* CPLR 7502 [c].) Although CPLR 7502 (c) was enacted on June 25, 1985 to become effective January 1, 1986, after the order appealed from and prior to this appeal, we think it appropriate to follow the principles embodied in it, principles that in any event are in essential accord with prior case law. *(See, e.g., Shay v 746 Broadway Corp.,* 96 Misc 2d 346.)

Accordingly, the order and judgment of the Supreme Court, New York County (Kenneth Shorter, J.), entered December 5, 1985, which granted petitioners' application to stay the arbitration demanded by appellant-respondent and dismissed with-

out prejudice the cross petition seeking an injunction, should be reversed, on the law, the facts, and in the exercise of discretion, with costs, to dismiss the petition to stay arbitration and to grant an injunction pending determination of the issues raised in the arbitration.

MILONAS, J. (dissenting). In my opinion, the order and judgment of the Supreme Court should be affirmed.

Paragraph 11 of the shareholders' agreement provides that any "claims, difference, dispute or question of interpretation" arising thereunder shall be determined through arbitration. However, the inclusion of an arbitration clause does not mean that an interested party is entitled to avail himself of such a procedure merely on demand regardless of whether or not there is a genuine matter to be arbitrated. In the instant situation, petitioners moved to stay arbitration on the ground that there is no arbitrable issue involved. The existence of an arbitrable issue is generally for the courts to determine. *(Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,* 37 NY2d 91.) In that connection, the majority concludes that Special Term's decision was based upon a finding that respondent's claim is without substantive merit rather than upon an assessment that no issue has been presented which can be arbitrated. I disagree. In my view, the Supreme Court did indeed rule that there is no issue to be arbitrated, and there is, in fact, none.

According to paragraph 4 (b) of the agreement, the shareholders will not authorize the subject corporation to undertake the following without respondent's express written approval: "(v) sell all or substantially all of Corporation's assets, or merge, consolidate or liquidate except pursuant to or in furtherance of transactions permitted under paragraph 4 (c) or pursuant to a transition in which MG shares in any direct or indirect benefit accruing to the other shareholders in the same proportion as MG's shares of Common Stock bear to all of Corporation's Common Stock then issued and outstanding, including, but not limited to, formation of a partnership as successor to the business and property of the Corporation".

Thus, it is clear that the agreement expressly authorizes the sale of all or most of the corporate assets so long as respondent shares in the benefits of the liquidation in the same proportion as his interest in the corporation. Although circumstances might conceivably arise in which respondent would be warranted in applying to the courts for an injunction to

prevent the sale—as, for example, were he to obtain evidence of the other shareholders' intent to defraud him, or to dissipate the corporation's property—none have been shown to exist at this time. Similarly, the shareholders' agreement does not establish particular guidelines to be followed in the event of a sale, so the arbitrator could not direct the manner of the auction. Indeed, the procedural details of the sale have not even been established.

By demanding arbitration, respondent merely suggests that because of petitioners' conduct in the past, and the extensive history of litigation between the parties herein, he has reason to believe that the future will only bring more of the same and that his interests will not be protected. No breach of the shareholders' agreement has been demonstrated or even alleged. Certainly, he has not shown that petitioners do not plan to pay him the proportionate share of the liquidation proceeds to which he is entitled or that he has not been afforded full disclosure of the actions of the majority shareholders. He is merely speculating as to what might happen in the future. Consequently, any damages to respondent are, at best, prospective, and an arbitrator cannot determine something that has not yet occurred. However, if his worst fears do materialize, and petitioners, once the liquidation has been effected, fail to distribute the proceeds as mandated under the agreement or can be shown to have engaged in any other improper or fraudulent practices, there is nothing to preclude him from obtaining full relief at that time either through arbitration or, where appropriate, in the courts. Moreover, he will also be able to procure all relevant financial information concerning the assets and property of the corporation, as well as the data surrounding the sale. Since there is no issue to be arbitrated and nothing has yet taken place which would in any way compromise respondent's interests, arbitration is premature.

ROSENBERGER and WALLACH, JJ., concur with SANDLER, J. P.; FEIN and MILONAS, JJ., dissent in an opinion by MILONAS, J.

Order and judgment (one paper), Supreme Court, New York County, entered on December 5, 1985, reversed, on the law, the facts, and in the exercise of discretion, to dismiss the petition to stay arbitration and to grant an injunction pending determination of the issues raised in the arbitration. Appellant shall recover of respondents $50 costs and disbursements of this appeal.