OPINION OF THE COURT
Stephen G. Crane, J.
Petitioner moves pursuant to CPLR 7502 (c) for a prelimi *1033 nary injunction pending arbitration to prevent termination of a license agreement dated May 15, 1981 (License Agreement). (Cf., First Natl. Stores v Yellowstone Shopping Center, 21 NY2d 630.) Pending the determination of this motion, a temporary restraining order has been in effect, on consent and without prejudice, extending the notice to terminate the License Agreement and enjoining any steps to terminate it.
In order to finance the research and development of his idea for a new device for removing lice from human hair, petitioner Albert Saferstein and his equal shareholder in Innomed, Inc., respondent Gilbert Spector, approached respondent Howard Wendy, Esq. Mr. Wendy formed and became managing partner of respondent Comb Associates. As a result, $700,000 was raised for Innomed to perform research and development of the lice comb. Comb Associates received all right, title and interest to the product.
After the device was developed and application was made for a patent, the License Agreement was executed between Comb Associates as licensor and Saferstein and Spector as licensees. Simultaneously, Saferstein and Spector made a sublicense agreement in favor of Innomed, Inc. The License Agreement embraced the development and manufacture of a series of combs used as lice disposal devices. The license is exclusive. It provides for royalties payable to the licensor, Comb Associates, of 25% of gross sales, in addition to other payments. The License Agreement is terminable by the licensees on six months’ notice or, if they default, by the licensor giving a 30-day notice of termination. Finally, the parties agreed that "[a]ny controversy or claim arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration”.
Over the years following the execution of the License Agreement, Innomed generated more than $3,000,000 in gross revenues from the products that were the subject of the License Agreement: a metal comb; a plastic comb marketed through Pfizer, Inc., and an adjustable plastic comb. But, Innomed has paid only approximately $500,000 in royalties on the sales of the Pfizer plastic comb. Another $166,000 has accrued on the sales of the metal comb but payment has been withheld. As a result, Comb Associates served a notice dated October 13, 1987, to terminate the License Agreement. Shortly thereafter, the licensor sued for an accounting and a judgment declaring *1034 the termination of the License Agreement. Within a week after this action began, petitioner[1] demanded arbitration.
The demand for arbitration, dated November 9, 1987, seeks a reformation of the royalty clause of the License Agreement as concerns the metal comb only. Unlike the plastic comb marketed by Pfizer, Inc., the metal comb is marketed by Innomed directly. Since the License Agreement bases royalties on gross sales, it becomes prohibitive to pay the royalty unless marketing costs are taken into account before royalties are calculated. Petitioner rests his claim for reformation on an allegation of "inadvertence or mutual mistake or because of Wendy’s inherent conflict in his various capacities as managing general partner of Comb Associates, and counsel for all of the various parties.”
Petitioner seeks injunctive relief because a termination of the License Agreement will put Innomed out of business and will allow respondents to relicense the lice combs. If petitioner prevails in arbitration, a reformation of the License Agreement will render the notice of termination invalid; but, he argues, without injunctive relief such an award will be rendered meaningless. Respondents, on the other hand, view money damages as sufficient to compensate petitioner and contend that they are really the aggrieved side: Innomed is in substantial arrears; they are receiving no royalties on the metal comb; and they are about to lose a very lucrative opportunity for a license to the Rexall Group which has offered $250,000 as an initial license fee.
CPLR 7502 (c), effective January 1, 1986, provides: "The supreme court * * * may entertain an application for * * * a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. The provisions of article * * * 63 * * * shall apply to the application, including those relating to undertakings”. This provision was intended to maintain the status quo pending arbitration in order to protect the viability of an award in favor of the applicant. (1985 Report of Advisory Comm on Civ Prac to the Chief Adm’r of the Cts, reprinted in Sixth and Seventh Ann Reports of Chief Adm’r, *1035 at 63.) This new mechanism in aid of arbitration, however, was limited to but one of the two basic grounds for granting preliminary injunctive relief — that the award may be rendered ineffectual through an act defendant (respondent) is doing or threatening in violation of plaintiff’s (petitioner’s) rights respecting the subject of the action (arbitration). The other ground — where a plaintiff has started an action for a permanent injunction of an act which would injure the plaintiff if the defendant pendente lite were permitted to commit or continue (CPLR 6301) — is unavailable to aid arbitration.
It is familiar learning that an applicant for a preliminary injunction must show a likelihood of success on the merits, irreparable injury if relief is withheld and a balance in his favor of the equities. (Albini v Solork Assocs., 37 AD2d 835; Chrysler Corp. v Fedders Corp., 63 AD2d 567.) The case at hand presents the nice issue of whether these time-honored hallmarks of equity pertain to an application under CPLR 7502 (c). Petitioner argues against their application except, perhaps, to the extent that the doctrine of unclean hands might bar equitable relief. He supports this view by citing the limitation in CPLR 7502 (c) to the single ground — that the award in petitioner’s favor may be rendered ineffectual in the absence of the injunction. The court rejects this attempt to straitjacket the equitable discretion of the court.
Clearly, the limitation of grounds in CPLR 7502 (c)[2] was not designed to make the court a simple rubber stamp.
Thus, the court has considered the threefold factors mentioned in Albini (supra). The claim of irreparable injury is met with a glib response that money damages would make petitioner whole if the License Agreement has been wrongfully terminated. This ignores the real threat that termination poses to the continued existence of Innomed whose only asset is the valuable sublicense. Furthermore, Innomed has a valuable marketing agreement with Pfizer, Inc., that would be *1036 defeated. This agreement generates substantial revenues from which royalties on the plastic comb are supposed to be paid to Comb Associates. Besides, the calculation of petitioner’s damages if the license passes to another is an exercise in speculation. It is true that part of these damages will be measured by the actual sales of the new licensee. But, if those sales could be greater had the license not been terminated, petitioner would be entitled to a higher sum incapable of measurement. In any event, the possibility that money damages may be adequate does not prevent injunctive relief. (Bashein v Landau, 96 AD2d 479; contra, Miller v Macri, 132 AD2d 691.)
The other two factors enumerated in Albini v Solork Assocs. (supra) call for an approach when the application arises under CPLR 7502 (c) different from the analysis when the motion is in aid of an action under CPLR article 63. In dealing with arbitrable controversies, the court’s role is limited by a firm policy that forbids intrusion on the province of the arbitral tribunal. Once the court decides that a dispute falls within the scope of an arbitration clause, it must go no further in assessing the merits of the claim. (Matter of Denihan [Denihan], 119 AD2d 144, 148, affd for reasons stated by Sandler, J., 69 NY2d 725; see also, Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co., 37 NY2d 91.) Indeed, CPLR 7501 specifically prescribes that a court in "determining any matter under this article [CPLR article 75] * * * shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.” Of course, it is supererogatory to mention that CPLR 7502 (c) is part of CPLR article 75.[3]
Therefore, in assessing the likelihood of success, it suffices to *1037 determine whether the arbitration clause is broad enough to encompass the claim asserted in the demand for arbitration. Clearly, reformation of the agreement for mutual mistake, inadvertence or Mr. Wendy’s conflict of interest presents a controversy relating to the agreement. This claim and the consequences petitioner invests in it are not so utterly without merit or refuted by incontrovertible evidence as to deprive them of a rational basis. (Cf , CPLR 7511 [b] [1] [iii].) For purposes of invoking this equitable remedy in the context of arbitration, petitioner has succeeded on the merits test.
Similarly, the question of balancing equities — the third Albini factor — must not be permitted to entice the court into the exclusive preserve of the arbitrator. To the extent this test involves consideration of the merits of the controversy or, for example, of the doctrines of estoppel or laches, the court must defer to the arbitrator. (See, e.g., Matter of Apuzzo v County of Ulster, 62 NY2d 960.)
In the case at bar, it is patent, without delving into the forbidden merits, that the equities favor a grant of the injunction. To withhold it presents the reality of corporate death for Innomed, Inc. and launches the parties into uncertain new relationships that will create speculative and incalculable damages if petitioner is ultimately found to be correct on the merits. Contrariwise, to grant the injunction pending a quick arbitration will merely delay respondents’ collection of sums that are already past due without substantially increasing the hazard that they may already be noncollectible. With respect to the short period between now and the arbitration award, a bond[4] will redress any harm that respondents have forecast. So, too, will a condition requiring payment of currently accruing royalties on all products other than the metal comb.[5]
Inasmuch as the arbitral controversy, according to petitioner’s own demand for arbitration, is limited to royalties on the metal comb, no interruption is tolerable in the flow of royal *1038 ties on the remaining products subject to the License Agreement. Therefore, the grant of injunctive relief will be conditioned upon the petitioner’s continued payment, with which respondent Spector is forbidden to interfere, of royalties on all products other than the metal comb as specified in the License Agreement from the date of entry of the order to be settled hereon. Prospective royalties on the metal comb shall be held in a separate account subject to further order of the arbitrator or court or upon agreement of the parties.
The undertaking that must be filed with the order to be settled hereon, as a further condition of the grant of the preliminary injunction, will be in such amount that will cover the prospective royalties, calculated in accordance with the License Agreement as it now reads, for a period of six months. The record reveals that the full royalties calculated in this manner conceded by petitioner for 1986 amounted to $66,361.48. On such a figure an undertaking of at least $33,000 would be necessary. However, a full calendar year has intervened and the general trend of royalties over the prior five years has been upward. The court selects a six-month period as realistic to process the arbitration to an award. The limitation on the undertaking will deprive respondents of an incentive to delay the arbitration. A final condition, that the injunction may be vacated on five days’ notice if the petitioner should procrastinate, will place both parties in a position to cooperate in completing the arbitration as expeditiously as feasible.
Settle order on notice including provision, with supporting calculations, for an undertaking in accordance with the principles and goals enunciated in this opinion.

. He claims that his coequal shareholder and director in Innomed, Gilbert Spector, refused to authorize the commencement of arbitration or of this proceeding. He speculates that Spector is participating with the other respondents in an effort to freeze petitioner out and that Specter’s interests are inimical to those of petitioner and Innomed.

. Though not important in this case and omitted from the quotation of CPLR 7502 (c) in the text, supra, the Legislature simultaneously authorized a court to grant the provisional remedy of attachment in aid of arbitration. But, for that remedy, as well as the remedy of preliminary injunction, relief was limited to the ground that the award would be rendered ineffectual. (See, CPLR 6201.) Cast aside by this simultaneous language in CPLR 7502 (c) were all remaining grounds available for an order of attachment in aid of an action: a nondomiciled defendant or unqualified foreign corporation; a domiciled defendant who cannot be personally served; the cause of action is based on a judgment entitled to full faith and credit.

. The policy — that the court keep "hands off” of the arbitrator’s function — is likewise seen in the constraints imposed in vacating awards under CPLR 7511 (b) (1) (iii). Only if the arbitrator has given a completely irrational construction to the agreement, thereby making a new contract (Matter of Natl. Cash Register Co. [Wilson], 8 NY2d 377, 383) or perhaps, if the arbitrator’s interpretation flew in the face of express contractual language (Sedita v Board of Educ., 53 AD2d 300, 308, revd on other grounds 43 NY2d 827; but see, Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578), may the court vacate the award for an excess of arbitral power. (See generally, 8 Weinstein-Korn-Miller, NY Civ Prac f 7511.17b.)
Thus, it can be argued that if the controversy and the relief sought by petitioner would entail a completely irrational construction of the contract by the arbitrator, there is no likelihood of success on the merits and the injunction should be withheld under CPLR 7502 (c). The case at bar does not present this situation.

. The undertaking requirement of CPLR 6312 (b) is expressly adopted by CPLR 7502 (c).

. Since an applicant must offer to do equity to secure equity (55 NY Jur 2d, Equity, § 112) it seems ungracious for petitioner to propose to deposit future accruing royalties — at least on products other than the metal comb— in an escrow-like account. The only justification for this arrangement is that an arbitration award reforming the royalty clause of the License Agreement will otherwise place petitioner in an overpayment situation. So be it. The overpayment can easily be recouped from future accruing royalties. The reality is that under the unreformed agreement, petitioner is heavily in arrears.