[682 NYS2d 391]

In the Matter of the Arbitration between CULLMAN VENTURES, INC., et al., Respondents, and EDWARD W. CONK et al., Appellants.

First Department, December 29, 1998

### APPEARANCES OF COUNSEL

*Arend J. Abel, Leigh A. Roveda* and *Patricia Hewitt* of counsel (*Leagre Chandler & Millard,* and *Hutton Ingram Yuzek Gainen Carroll & Bertolotti, L. L. P.,* attorneys), for appellants.

*Edward L. Powers* of counsel (*Wende S. Ascher* and *Marla Felton* on the brief; *Richards & O'Neil, L. L. P.,* attorneys), for respondents.

### OPINION OF THE COURT

Tom, J.

■ Respondents in this CPLR article 75 special proceeding are several members of the Conk family and a related trust, who formerly held the majority of shares in petitioner Day Dream, Inc., an Indiana corporation. Repercussions from the sale of the stock by these former shareholders to petitioner Cullman Ventures, Inc., a New York corporation, and an agreement by the reconstituted corporation to employ one of the former shareholders, resulted in the commencement of arbitrations and civil actions in Indiana and New York. Present petitioners' goal is to incorporate within the New York arbitration all substantive claims currently advanced in the Indiana

arbitration, on the theory that the claims arise from a common set of facts and, at least as litigated by petitioners, interrelate at some points. Present respondents, relying on standard canons of contract law and choice of forum clauses in the agreements, note that, notwithstanding potential points of overlap, the claims nevertheless arise under separate agreements containing distinct arbitration clauses clearly establishing protocols relating to forum selection. The issue presented for review is whether the IAS Court properly enjoined the Indiana arbitration. We conclude that it did not, and we reverse.

Various members of the Conk family held a 51% interest in Day Dream, an Indiana corporation which had been operated by Edward W. Conk. The Conks, other Day Dream shareholders, and petitioner Cullman Ventures entered into a March 24, 1997 stock purchase agreement providing for sale to Cullman of all Day Dream capital stock. In relevant part, the stock purchase agreement, which contained detailed representations concerning the financial condition of the company, stated that it would be interpreted according to the laws of New York, and that any conflicts would be resolved by arbitration in New York in accordance with the rules of the American Arbitration Association (AAA), unless the parties mutually agreed to waive this provision.

By a separate agreement effective April 11, 1997, the date of the closing of the stock purchase, Day Dream agreed to employ respondent Edward W. Conk as Chairman of the Board through May 31, 2001. The employment agreement provided that Conk could be terminated only for cause, conditioned on 10 days written notice to Conk and providing him an opportunity to dispute the stated reason for termination. This agreement required that it be construed in accordance with Indiana law, and that conflicts would be resolved by arbitration commenced in Indiana, also subject to AAA rules unless this provision was mutually waived in writing.

By letter dated September 22, 1997, Day Dream terminated Conk, effective October 3, 1997, for specified claimed improprieties, including overstating sales and accounts receivables and an alleged diversion of sales from Day Dream to a company controlled by Conk's brother, co-respondent Christopher Conk. Edward W. Conk's counsel responded in writing, denying the claims and seeking a resolution of the employment dispute. The attorney's letter also contended that 10-day notice of termination had not been provided.

On December 17, 1997, Edward W. Conk commenced an arbitration against Day Dream, his employer, arising under

the employment agreement and brought in Indiana as per that agreement, claiming procedural defects in that, *inter alia*, he had not been provided the requisite 10-day notice and an opportunity to dispute the basis for his termination. His discovery requests made in connection with that arbitration focused on the company's claim that Conk had acted improperly.

On December 16, 1997, Edward W. Conk further commenced an action for defamation against Day Dream and Cullman in Indiana State court, relating to the alleged third-party publication of Day Dream's allegations. The complaint did not allude to the stock purchase transaction, contrary to the finding by the IAS Court that the defamation related to allegations in the subsequent New York arbitration relating to the sale of the stock. Cullman and Day Dream moved to dismiss the defamation action in that forum, contending that its basic claims actually were encompassed in the arbitration clauses of the two agreements. The motion was granted after the date of the order presently under review. Conk has not appealed, but he apparently intends to incorporate the defamation claim in the Indiana arbitration.

On January 9, 1998, three weeks after commencement of the Indiana arbitration regarding the employment agreement, Cullman, as stock purchaser, commenced an arbitration proceeding in New York, as per the arbitration clause of the stock purchase agreement, against present respondents as former Day Dream shareholders, alleging fraud and breach of the stock purchase agreement.

Day Dream then moved in Indiana, on January 29, 1998, to dismiss the Indiana arbitration, arguing that the requisite 10-day notice had been given to Conk. Conk now sought amendment to incorporate a claim for "substantive breach of contract" (as distinct from the purported procedural breach arising from failure to provide notice) alleging falsity in Day Dream's reasons for his termination, relying on the putative absence of good cause for the termination, and contending that Day Dream thereby breached the employment contract. These claims, though, still related to the employment dispute, arising under the employment agreement. Although petitioners presently contend that certain of Conk's disclaimers in that regard track the claims made in the New York arbitration and thus implicitly tie the arbitrations together, this is not apparent from the facial language of the amendment, even when juxtaposed with the termination letter and Conk's attorney's response to it.

On February 20, 1998, present respondents, including Conk, answered in the New York arbitration (i.e., arising under the stock purchase agreement) and counterclaimed for rescission of the sale of stock to Cullman, basically contending that certain escrowed funds had not been paid to them, that promises of employment had not been kept, and that financial obligations otherwise had not been satisfied by the purchasers.

Respondents, including Conk, then commenced a second Indiana State court action, on February 24, 1998, against Cullman and Day Dream seeking to enjoin transfers of Day Dream assets and for a declaration establishing the Conks' rights, including available remedies, pending determination of their counterclaim for rescission in the New York arbitration. In that complaint, the Conks, referencing their counterclaim in the New York arbitration, alleged that Cullman had made misrepresentations and false promises to induce them to sell the stock. This complaint also alleged instances of fraud, unjust enrichment and other improprieties, citing the need for injunctive relief, including restraints on transfers of assets and payments of dividends, to maintain the status quo. Cullman and Day Dream, on February 27, 1998, successfully removed that civil action to Federal court in Indiana. The claim for declaratory relief was dismissed by order entered May 18, 1998, after the date of the order presently under review.

In the meantime, on February 24, 1998, Cullman and Day Dream had commenced the present special proceeding by order to show cause. They essentially sought an order of the IAS Court compelling Conk (i.e., the sole claimant in the Indiana employment agreement arbitration) to arbitrate the Indiana claims, including defamation, in New York and to enjoin him from litigating any such claims in any forum other than New York. The following day, on February 25, 1998, Cullman and Day Dream amended the petition in this proceeding to name all respondents in addition to Conk.

The IAS Court granted the petition to the extent of directing arbitration of the defamation and "substantive breach of contract" claims in New York, and enjoining Conk personally from further litigation of these claims in Indiana. The court found that Conk's "substantive breach of contract" claim advanced in the Indiana arbitration, the defamation action, and the New York arbitration all involved the same allegations of fraud on Conk's part. The court noted its concern that an award in the New York arbitration favoring petitioners on these issues (i.e., that the stock sale was accomplished by fraud

and misrepresentations, breaching the stock purchase agreement, and essentially giving the lie to Conk's defamation complaint) otherwise could be rendered moot by a contrary ruling in the Indiana arbitration (i.e., that the putative grounds for Conk's termination were false, validating the defamation claim and undermining claims of Conk's financial misrepresentations). The court also held that the "procedural" breach of contract claim, asserting defective notice, was left unaffected and still arbitrable in the Indiana proceeding insofar as it bore no relationship to the reason for which Conk was terminated.

Initially, a careful parsing of the diverse claims in these several proceedings indicates that the IAS Court relied on purported overlaps among these proceedings that are not borne out by the record. Hence, the court's finding, upon which its decision turned, that all claims rely on the same allegations of fraud committed by Conk, is unsupported. However, even if there was a greater confluence of claims, the court erred procedurally.

The IAS Court effectively consolidated the different arbitrations in a New York forum. By conflating two different arbitrations, arising under separate and distinct agreements, involving different parties, the court improperly intruded into what clearly were binding contractual arrangements. Under the Federal Arbitration Act (see, 9 USC §§ 1, 2), privately negotiated arbitration agreements are to be enforced according to their terms (*Volt Information Sciences v Stanford Univ.*, 489 US 468, 476), absent an established ground for setting aside a contractual provision, such as fraud, duress, coercion or unconscionability (*Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith*, 85 NY2d 173, 182), factors not present here. Hence, courts may not consolidate arbitrations in contravention of the parties' agreement even if consolidation would ensure a more economical proceeding. Nor may courts direct that the arbitration take place in a forum other than that specified in the agreement, notwithstanding a possibly fairer or more convenient proceeding in a forum not designated in the agreement (*Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith, supra*, at 181-182). To the contrary, the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement" (*Cone Mem. Hosp. v Mercury Constr. Corp.*, 460 US 1, 20), notwithstanding possibly inconsistent determinations arising from the separate arbitrations (*Government of United Kingdom v Boeing Co.*, 998 F2d 68). A

court's failure to give effect to provisions in separate agreements contemplating separate arbitrations is an unauthorized reformation of those contracts. As the Second Circuit has noted, "[i]f contracting parties wish to have all disputes that arise from the same factual situation arbitrated in a single proceeding, they can simply provide for consolidated arbitration in the arbitration clauses to which they are a party" (*supra,* at 74). That logic applies equally here. The IAS Court lacked authority to enjoin the Indiana arbitration, or prohibit the arbitration of those claims in any forum other than New York, or to interfere, in any manner, with the Indiana arbitration carried out under the terms of that agreement, even if the court articulated salutary grounds for doing so.

■ Nor did the court acquire authority under CPLR 7503 (a) or (b), governing applications to compel or to stay arbitration, respectively, under New York law. Those provisions by their terms apply only when one party, seeking to compel arbitration, is aggrieved by the failure of another party to arbitrate, or when a party not participating in an arbitration seeks to stay the proceeding on the basis that a valid agreement either was not made or was not complied with. Those conditions are not present here. Conk does not resist New York arbitration of the stock transaction, but only pursues his contractual right to arbitrate his termination pursuant to his employment contract with Day Dream. Moreover, in line with case law under the FAA, we have declined to find the necessary authority when the court's order effectively rewrites the arbitration agreements (*Matter of Continental Energy Assocs. v ASEA Brown Boveri,* 192 AD2d 467).

We also find that the matters being arbitrated in Indiana are not substantively intertwined with the New York arbitration. In Indiana, Conk is challenging the termination of his employment. Even if petitioners' characterization was accurate (which it is not) that the reasons given by Day Dream for the termination included Conk's role in the stock transaction with Cullman, this would be one among several reasons and one that particularly relates to events occurring prior to his employment in question. Given the broad language of the arbitration clause in the employment agreement, Conk was perfectly entitled to challenge the stated basis for his termination in an arbitration venued in Indiana. The particular reasons provided would not change the basic fact that an Indiana venue was negotiated and agreed upon with respect to any basis for termination. The mere fact that there exists some nexus be-

tween a reason for his termination and the subject matter of some other agreement among these and other parties does not alter the forum selection directive in the arbitration clause of the employment agreement.

■ Moreover, even if we found the IAS Court's reasoning in this regard more persuasive, the second-commenced arbitration still should not have been given a preference over the first-commenced, Indiana, arbitration. It is undisputed that the Indiana arbitration was commenced approximately three weeks before the New York arbitration. We would not be persuaded otherwise by the fact that the "substantive breach of contract" claim was added to the Indiana arbitration after commencement of the New York arbitration when, as here, Day Dream was on notice, especially by the nature of Conk's December 1997 discovery requests, that Conk was challenging the basis for his termination as well as inadequate notice.

Petitioners contend that the grant of provisional remedy by the motion court staying the Indiana arbitration was authorized under CPLR 7502 (c). That section authorizes a preliminary injunction in connection with an arbitrable controversy, "but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." Initially, whatever the outcome of the Indiana arbitration, it affects only Conk, the sole claimant in the Indiana arbitration claiming aggrievement as a wrongfully discharged employee, and has no direct bearing on the other respondents to the present action. Hence, petitioners can hardly claim that their relief in the New York arbitration will be rendered ineffectual if the Indiana arbitration concludes first. Nor was Day Dream, the named respondent in the Indiana arbitration, a party to the stock purchase agreement. Further, petitioners' concern for issue preclusion cuts both ways— why should the latter-commenced New York arbitration proceed when its determined arbitration award could preclude resolution of issues raised in the prior-commenced Indiana arbitration? Moreover, we apply the general criteria governing the issuance of injunctive relief to an application for a preliminary injunction under CPLR 7502 (c) (*New York City Off-Track Betting Corp. v New York Racing Assn.*, 250 AD2d 437; *Koob v IDS Fin. Servs.*, 213 AD2d 26, 32; *see also*, Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7502:6, at 433 [1998]), and, on this record, petitioners have failed to demonstrate a likelihood of success on the merits, irreparable injury, or that the equities balance in their favor.

Finally, the CPLR 7502 injunctive relief in this case is contrary to the objective of the FAA, noted above, that arbitration agreements be given full effect as stated.

Accordingly, the order of the Supreme Court, New York County (Leland DeGrasse, J.), entered on or about May 18, 1998, insofar as appealed from, which directed the parties to arbitrate in the New York arbitration all disputes encompassed by the defamation action commenced by respondent Edward W. Conk against petitioners in Indiana, and the "substantive breach of contract" claim by respondent Edward W. Conk against petitioner Day Dream in the Indiana arbitration, enjoined that respondent from further litigation of these claims pending the outcome of the New York arbitration, enjoined respondents from litigating any aspect of the "stock purchase agreement" in any forum other than the New York arbitration, and ordered that all such claims be litigated in the New York arbitration, should be reversed, on the law, without costs, to deny the petition in toto and dismiss the proceeding.

MILONAS, J. P., ELLERIN, RUBIN and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered on or about May 18, 1998, reversed, on the law, without costs, the petition seeking to, *inter alia,* compel respondent Edward W. Conk to arbitrate in New York all claims, disputes, and other matters arising out of or in any way relating to the parties' stock purchase agreement, denied in toto and the proceeding dismissed.