**SG COWEN SECURITIES CORPO-RATION, Petitioner–Appellant,**

v.

**Robert W. MESSIH, Respondent–Appellee.**

No. 00–7607.

United States Court of Appeals, Second Circuit.

Argued: July 10, 2000

Decided: Aug. 18, 2000

Philippe M. Salomon, Willkie Farr & Gallagher (Judd F. Sneirson, Brett E. Wiggins, of counsel), New York, New York, for Petitioner–Appellant.

Lawrence I. Weinstein, Proskauer Rose LLP (Michael T. Mervis, Kevin J. Perra, of counsel), New York, New York, for Respondent–Appellee.

Before: WINTER, Chief Judge, WALKER, and JACOBS, Circuit Judges.

WINTER, Chief Judge:

SG Cowen Securities Corporation ("Cowen") appeals from Judge Baer's partial denial of a motion for a preliminary injunction in aid of arbitration. Appellant contends that the state law provision under which the injunction was sought, N.Y. C.P.L.R. § 7502(c), does not permit the issuing judge to consider traditional equitable standards for preliminary injunctive relief, namely, irreparable harm, likelihood of success, and the balance of the equities. We disagree and affirm.

## BACKGROUND

The pertinent facts are not in dispute. In July 1999, Cowen hired appellee Robert W. Messih, an investment banker, to serve as managing director in its San Francisco office. Messih was hired to lead Cowen's efforts in the electronics and semiconductor sectors. Messih signed an eighteen-month contract that included, among other things: (i) a non-compete provision that purported to prevent Messih from "act[ing] as an officer, director, [or] employee of any firm, corporation, institution or entity directly or indirectly engaged in a business that is substantially similar to that in which [he was] engaged during [his] employment with [Cowen]" throughout the prescribed term of the contract; (ii) a clause that required all disputes to be resolved by an arbitration panel in San Francisco pursuant to the rules of the New York Stock Exchange; (iii) a clause that purported to grant Cowen the right to injunctive relief against a breach of the non-compete clause; and (iv) a choice-of-law clause designating New York law as governing the interpretation and application of the terms of the contract.

Messih worked for Cowen until April 11, 2000, when he resigned to begin work for Banc of America, a Cowen competitor in Palo Alto. Three days later, Cowen brought an action in New York Supreme Court seeking temporary injunctive relief in aid of arbitration, pursuant to N.Y. C.P.L.R. § 7502(c), and served Messih and Banc of America with notice of intent to arbitrate. The New York Supreme Court issued an *ex parte* temporary restraining order ("TRO") enjoining, without geographical limitation, Messih from working for "any entity that competes with SG Cowen," and from divulging any Cowen trade secret or confidential information. That court also issued an order to show cause, returnable April 28, 2000, why a preliminary injunction should not issue pending arbitration.

On April 27, 2000, Messih removed the action to the Southern District of New York. On May 1, he filed a motion to dissolve so much of the TRO as restrained him from working for any Cowen competitor. On May 17, the district court granted the motion, holding that an injunction issued pursuant to Section 7502(c) requires analysis under traditional equitable crite-

ria, including "(1) a likelihood of success on the merits, (2) danger of irreparable injury if provisional relief is withheld; and (3) a balance of the equities tipping in [petitioner's] favor." *SG Cowen Sec. Corp. v. Messih,* No. 00Civ.3228, 2000 WL 633434, at *2 (S.D.N.Y. May 17, 2000). With regard to the merits, the district court found that the choice-of-law clause was inapplicable under New York choice-of-law rules because enforcement of the non-compete provision would violate the public policy of California, which had more substantial contacts with the contract; that California law, rather than New York law, governed the dispute; that under either state's law, the non-compete provision was unenforceable; and that, therefore, Cowen could not demonstrate any likelihood of success on the merits. *See id.* at *3–*5. The district court further found that Cowen failed to demonstrate irreparable harm and that the equities did not tip in its favor. *See id.* at *6. Nonetheless, with Messih's consent, the district court issued a preliminary injunction enjoining him from divulging any Cowen trade secrets or otherwise confidential information and from soliciting any client he had developed while at Cowen. *See id.*

This appeal followed.

## DISCUSSION

■ We review a district court's denial of a preliminary injunction for abuse of discretion. Errors of law or fact may constitute such abuse. *See Beal v. Stern,* 184 F.3d 117, 122 (2d Cir.1999); *Sal Tinnerello & Sons, Inc. v. Stonington,* 141 F.3d 46, 51–52 (2d Cir.), *cert. denied,* 525 U.S. 923, 119 S.Ct. 278, 142 L.Ed.2d 230 (1998). The primary question on appeal is whether the district court erred as a matter of law when it applied traditional equitable criteria to its consideration of Cowen's petition for a preliminary injunction under N.Y. C.P.L.R. § 7502(c).

Section 7502(c) provides, in relevant part:

> The supreme court ... may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. The provisions of articles 62 and 63 of this chapter shall apply to the application ... except that the sole ground for the granting of the remedy shall be as stated above.

N.Y. C.P.L.R. § 7502(c). Articles 62 and 63 constitute, respectively, New York's rules on the granting of prejudgment attachments and preliminary injunctions. N.Y. C.P.L.R. §§ 6201, 6301. Article 63 incorporates the equitable criteria traditionally required for the granting of preliminary injunctive relief: likelihood of the petitioner's success on the merits, danger of irreparable harm to the petitioner should preliminary relief be denied, and a balancing of the equities that tips in the petitioner's favor. *See, e.g., Aetna Ins. Co. v. Capasso,* 75 N.Y.2d 860, 552 N.Y.S.2d 918, 552 N.E.2d 166, 167 (1990); *Kensington Court Assocs. v. Gullo,* 180 A.D.2d 888, 579 N.Y.S.2d 485, 486 (3d Dep't 1992).

Appellant argues that because Section 7502(c) authorizes relief "only upon the ground that the award ... may be rendered ineffectual without such provisional relief," a court entertaining an application for an injunction in aid of arbitration cannot take into account the traditional standards governing preliminary injunctive relief described above. Based on this interpretation, Cowen claims that it is entitled to injunctive relief enjoining Messih from working for its competitor because each day that he is permitted to work at Banc of America renders any possible arbitral award in its favor increasingly "ineffectual."

There is support for Cowen's position. *See H.I.G. Capital Management, Inc. v. Ligator,* 233 A.D.2d 270, 650 N.Y.S.2d 124, 125 (1st Dep't 1996) (holding that "rendered ineffectual" standard is "sole appli-

cable standard" in deciding § 7502(c) motion); *In re Guarini*, 233 A.D.2d 196, 650 N.Y.S.2d 4, 4–5 (1st Dep't 1996) (holding that trial court "properly refused to consider the merits" of arbitrable claim that was basis for petitioner's § 7502(c) motion); *Nat'l Telecomm. Ass'n v. Nat'l Communications Ass'n*, 189 A.D.2d 573, 592 N.Y.S.2d 591, 591 (1st Dep't 1993) ("In arguing that petitioner has failed to demonstrate irreparable harm and a probability of success on the merits, respondent would have this court adopt an inappropriate standard for deciding whether relief should be granted under CPLR 7502(c), under which the ground for entertaining an application ... is whether the award may be rendered ineffectual without it." (internal quotation marks and citations omitted)); *Suffolk Cty. Patrolmen's Benevolent Ass'n v. County of Suffolk*, 150 A.D.2d 361, 540 N.Y.S.2d 882, 883 (2d Dep't 1989) (holding that Article 63 "is simply inapplicable to applications for injunctive relief in ... arbitrable controversies" (internal quotation marks omitted)) (citing *Drexel Burnham Lambert Inc. v. Ruebsamen*, 139 A.D.2d 323, 531 N.Y.S.2d 547, 550 (1st Dep't 1988)); *Kobra Int'l, Ltd. v. D. Klein & Son, Inc.*, N.Y.L.J., May 28, 1999, at 26 (N.Y.Sup.Ct.1999) ("[Section 7502(c) ] should be applied as written, and [whether an arbitral award to which petitioner might be entitled may be rendered ineffectual without provisional relief] should be the only consideration in deciding whether to grant a preliminary injunction ...."); *see also In re Denihan*, 119 A.D.2d 144, 506 N.Y.S.2d 39, 42 (1st Dep't 1986) (discussing requirement, under N.Y. C.P.L.R. § 7501, that "[i]n determining any matter arising under [Article 75], the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute" (internal quotation marks omitted)), *aff'd* 69 N.Y.2d 725, 512 N.Y.S.2d 367, 504 N.E.2d 694 (1987); Eric J. Wallach, Litigating "Raiding" Cases, 1166 PLI/Corp. 285, 299 (2000) ("In New York State ... the standard for granting temporary or preliminary injunctive relief in aid of arbitration is a significantly less onerous standard than the normal elements.").

Notwithstanding those decisions, New York caselaw is at best ambivalent about whether or not Section 7502(c) requires that traditional equitable criteria for the granting of temporary relief be met, and several cases hold or imply that Article 63 criteria must be applied to a motion under Section 7502(c). *See In re Cullman Ventures, Inc.*, 252 A.D.2d 222, 682 N.Y.S.2d 391, 396 (1st Dep't 1998) ("[W]e apply the general criteria governing the issuance of injunctive relief to an application for a preliminary injunction under CPLR 7502(c)"); *Koob v. IDS Fin. Servs., Inc.*, 213 A.D.2d 26, 629 N.Y.S.2d 426, 432 (1st Dep't 1995) ("It is ... imperative that a grant of preliminary injunctive relief [pursuant to § 7502(c) ] proceed from an evaluation of petitioner's circumstance in light of the customary equitable criteria."); *see also Leake v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 213 A.D.2d 155, 623 N.Y.S.2d 220, 221 (1st Dep't 1995) ("[T]he trial court erred by not entertaining, and granting Merrill, Lynch's application for a preliminary injunction [pursuant to] CPLR § 7502(c), due to the likelihood of the respondent's success on the merits ...." (citation omitted)); Vincent C. Alexander, Practice Commentary C7502:6, 7B McKinney's Consol. Laws of N.Y. 431, 433–34 (1998) (stating that New York's courts have been "ambivalent" about whether Article 63 criteria apply to granting of preliminary injunction under Section 7502(c), and opining that such criteria should indeed apply); Laurie A. Kamaiko, Reinsurance Arbitrations, 557 PLI/Lit. 201, 266 (1997) ("Under New York state law, a party seeking an injunction [under Section 7502(c) ] must also make the customary showing of need for injunctive relief: danger of irreparable harm and strong likelihood of success in the dispute."); *cf. Saferstein v. Wendy*, 137 Misc.2d 1032, 523 N.Y.S.2d 725, 727–28 (N.Y.Sup.Ct.1987)

(applying criterion of irreparable injury to Section 7502(c) motion, but making only limited inquiries of likelihood of success and balancing of equities in order to avoid "delving into the forbidden merits").

■ Our own analysis of the statute is less ambivalent. The language of Section 7502(c) is hardly as clear as Cowen asserts.[1] To "entertain" an application "only upon" a particular "ground" renders that ground an indispensable but not necessarily exclusive element of a successful application. Indeed, the statute's explicit mention of the applicability of Article 63—which embodies the traditional standards for preliminary injunctive relief—followed by the "except that the sole ground for granting" language can easily be read as indicating that relief can be denied under the traditional standards and granted only if those standards and the "rendered ineffectual" test are met.

The legislative history supports that reading of Section 7502(c). At the time Section 7502(c) was proposed in the New York Senate, provisional remedies in aid of arbitration were available in proceedings under the Federal Arbitration Act but not in New York state court proceedings. To obtain provisional relief in aid of arbitration in state court, a party to an arbitrable dispute was required to commence both an arbitration proceeding and an action in New York Supreme Court, the latter serving as the basis for injunctive relief. *See* Committee on Civil Practice Law and Rules, N.Y. State Bar Ass'n, Legislation Report No. 57 (1985), *reprinted in* New York Legislative Service, Governor's Bill Jacket 1985 Ch. 253, at 19.

There is nothing in the history of Section 7502(c) that suggests any greater purpose than to eliminate the need to file duplicative actions and to equate the relief available in state court with that available in federal court, which of course was conditioned on meeting the traditional standards for preliminary injunctive relief. Indeed, the understanding of the pertinent bill when then-Governor Cuomo signed it was that the bill would "enabl[e] the supreme court, *upon meeting the standard of proof currently required by Articles 62 and 63* to provide for remedies in conjunction with the arbitration which would protect the status quo pending determination in the arbitration proceeding." *Id.* (emphasis added). Thus, Section 7502(c) was intended to provide preliminary relief in state court that had previously been unavailable but to condition that relief—when available under the criteria set out in Article 63—to cases where an arbitration award might otherwise be rendered ineffectual. *See* 1985 Report of the Advisory Committee on Civil Practice to the Chief Administrator of the Courts of the State of New York, at 112 ("The Committee recommends that the court be authorized to entertain applications for the remedies of attachment (CPLR Article 62) and preliminary injunction (CPLR Article 63) *when shown to be needed to preserve the efficacy of a potential arbitral award.*" (emphasis added)); *cf.* Brian A. Carlis & John E. MacDonald, Attachment in Aid of Arbitration, 1061 PLI/Corp. 149, 156–57 (1998) ("It is clear from the ... legislative history that the intention of the Office of Court Administration was merely to qualify arbitration as a 'special proceeding,' thereby providing for attachment as a remedy available to Claimants when their potential arbitration award might otherwise be rendered ineffectual.").

Given this legislative history, we are persuaded that the First Department's recent interpretation of Section 7502(c), *see, e.g., Cullman Ventures,* 682 N.Y.S.2d at 396, is the correct one, and that the district court properly applied Article 63 criteria to Cowen's Section 7502(c) motion.

---

1. Certification of the issue at hand to the New York Court of Appeals pursuant to N.Y. Comp.Codes R. & Regs. Tit. 22, § 500.17 and 2d Cir. R. § 0.27 is not feasible in light of the need for a prompt resolution of this matter. *See Tunick v. Safir,* 94 N.Y.2d 709, 709 N.Y.S.2d 881, 731 N.E.2d 597 (2000) (per curiam).

Cowen also relies on Section 7501, which provides:

A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.

N.Y. C.P.L.R. § 7501. The availability of preliminary injunctive relief is of course a "matter arising under this article" and the traditional equitable standard of likelihood of success may involve an inquiry into whether the "claim ... is tenable" and "pass[ing] upon the merits," at least to a degree. *Id.* Arguably, therefore, Section 7501 precludes consideration of the likelihood of success—but not a balancing of the equities—in determining an application for preliminary relief in aid of arbitration. We are not persuaded, however.

Section 7501 existed in its present form long before Section 7502(c) was enacted. Section 7501 was intended to ameliorate judicial hostility to arbitration that ofttimes exhibited itself in excessive scrutiny of the underlying merits in refusing to order arbitration. *See* Vincent C. Alexander, Practice Commentary, C7501:1, 7B McKinney's Consol. Laws of N.Y. 285–87 (1998). Section 7502(c)'s later inclusion of likelihood of success as one standard governing preliminary injunctive relief performs an entirely different function because the fact of arbitration is a premise of such relief. The likelihood of success is thus measured in terms of the likelihood of success *in arbitration.* But arbitration is frequently marked by great flexibility in procedure, choice of law, legal and equitable analysis, evidence, and remedy. Success on the merits in arbitration therefore cannot be predicted with the confidence a court would have in predicting the merits of a dispute awaiting litigation in court, and it can be expected that when the merits are in the hands of an arbitrator, this element of the analysis will naturally have greatly reduced influence. Any tension between the two provisions is therefore at a literal rather than functional level.

Moreover, we cannot ignore the fact that, if appellant's reading of Section 7502(c) were to prevail, serious due process concerns would arise. Appellant's argument would compel the granting of preliminary injunctive relief (or an attachment) even in circumstances where the applicant had no chance of success and the harm done to the enjoined party would be substantial and irreparable. An issuing court in such circumstances, prohibited from any consideration of the merits of the underlying claim or the relevant equities, would have to grant the relief even if it imposed great hardship upon the enjoined party without even a colorable showing of merit in the underlying claim. Whether due process would allow such a proceeding is doubtful. *Cf. Connecticut v. Doehr*, 501 U.S. 1, 18, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (holding that state attachment procedure that does not require preattachment hearing or showing of exigent circumstances falls short of due process requirements).

■ The district court therefore properly considered the traditional standards governing preliminary injunctive relief. We also believe that the district court did not abuse its discretion in holding that Cowen had failed to demonstrate a likelihood of success, given the many hurdles in its path, or irreparable harm, given the availability of money damages should the clause be found enforceable. Finally, the district court's conclusion that the equities tip in Messih's favor is hardly in doubt. Had the injunction issued, Messih would have been restrained from working as an investment banker, would have lost substantial performance bonuses and business contacts, and perhaps suffered reputational damage that would be difficult to quanti-

fy. In contrast, Messih consented to being enjoined from divulging Cowen trade secrets or other confidential information, and from soliciting any client he had brought to Cowen. Given those concessions, it is difficult to see how Cowen is seriously harmed by the district court's denial of the injunction.

## CONCLUSION

We therefore affirm.